539 A.2d 799

**In the Matter of Sylvia SEEGRIST.**

**Appeal of Sylvia SEEGRIST.**

Supreme Court of Pennsylvania.

Argued March 10, 1987.

Decided March 30, 1988.

John H. Corbett, Jr., Frank L. Cecchetti, Office of the Public Defender, Pittsburgh, for appellant.

Edward P. Carey, Howard Ulan, Asst. Counsel, Dept. of Public Welfare, Pittsburgh, for amicus curiae.

LeRoy S. Zimmerman, Atty. Gen., Harrisburg, James A. Esler, Allegheny County Law Dept., Pittsburgh, for appellees.

Scott E. Henderson, Thorp, Reed & Armstrong, Pittsburgh, for Pittsburgh Press.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Appellant, Sylvia Seegrist, appeals directly to this Court, as of right under 42 P.S. § 722(7),[1] from an opinion and order of the Court of Common Pleas of Allegheny County, Raymond A. Novak, J. The order in question refused to exclude a member of the press from an informal conference

1. 42 P.S. § 722 provides, *inter alia:*

   § 722. *Direct appeals from courts of common pleas*

   The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases: ...

   (7) Matters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter....

conducted pursuant to Section 303 [2] of the Mental Health Procedures Act,[3] presided over by Judge Novak, and held for the purpose of committing Appellant "for involuntary emergency treatment—not to exceed twenty days." The trial judge inexplicably applied Section 304(e)(4) [4] to the instant informal conference, and then held that its requirements were in conflict with the constitutional right of the public and the press to have free access to the courts under the First, Sixth and Fourteenth Amendments to the Constitution of the United States, and Article I, Sections 7 and 11 of the Pennsylvania Constitution. On its face, Section 304(e)(4) of the Mental Health Procedures Act is applicable only to formal hearings held in response to a petition for "court-ordered involuntary treatment—not to exceed ninety days." It provides that: "The hearing shall be public unless it is requested to be private by the person or his counsel." We affirm the trial court's order permitting the press to be present at the informal conference held in this case, but we expressly reject the finding that Section 304(e)(4) is unconstitutional because said finding was unnecessary to the resolution of the issues herein.

Appellant was accused of shooting several people in a suburban Philadelphia shopping mall on October 30, 1985. Three people were killed and seven wounded. This incident was widely reported by both the print and broadcast media. Articles concerning the incident appeared in both of the general circulation daily newspapers published in Pittsburgh.

In early November, Appellant was transferred from the Delaware County jail, where she 'had been detained on several homicide charges, to the Mayview State Hospital in Allegheny County for emergency confinement since it was the only forensic facility in the Commonwealth available for women. This transfer was reported in *The Pittsburgh Press* on November 5, 1985. On November 4, 1985, a

2.  50 P.S. § 7303.
3.  50 P.S. § 7101 et seq.
4.  50 P.S. § 7304(e)(4).

certification petition for involuntary emergency treatment pursuant to Section 303 of the Mental Health Procedures Act was filed on behalf of the Commonwealth and Allegheny County in the Court of Common Pleas of Allegheny County, Criminal Division, (R. 6). A copy of this certification was served on counsel for Appellant, the Office of the Public Defender, Mental Health Advocacy Unit, on November 6, 1985. By letter dated the same date, Judge Catania of the Court of Common Pleas of Delaware County "authorized" the Allegheny County Common Pleas Court to act on their behalf in this matter under Section 303. (R. 1). By order of court, the Section 303 proceeding or "conference" was scheduled and held on November 8, 1985. (R. 6, 8).

The November 8, 1985, conference was conducted before Judge Novak to determine whether Appellant should undergo involuntary emergency treatment for a period of twenty days pursuant to Section 303. An attorney from the Public Defender's Office appeared at the conference to represent Appellant and he waived her appearance. At the commencement of the proceeding, counsel for Appellant requested that the conference be private pursuant to Section 304(e)(4) of the Mental Health Procedures Act, cited above, inspite of the fact that this was clearly a Section 303 proceeding. Specifically, he asked that the "courtroom be cleared." [5]

Immediately, a person in the audience, later identified as a newspaper reporter for Appellee, *The Pittsburgh Press*, objected to a closed proceeding and requested the opportunity to have legal counsel present to argue the constitutional requirements for a public hearing. A brief recess was granted and counsel appeared on behalf of the newspaper, and on behalf of the Attorney General for the Commonwealth, along with the Solicitor for Allegheny County.

After hearing arguments from counsel for the respective parties, the court found that the public interest was paramount to any claim of a privacy interest and, accordingly, determined that Section 304(e)(4) of the Mental Health

**5.** See Judge Novak's opinion of July 21, 1986, p. 2.

Procedures Act was unconstitutional, despite the fact that this was a Section 303 proceeding.

After this ruling, the conference resumed with counsel for Appellant stipulating to the allegations of dangerous conduct and to the need for treatment stated in the petition. Hence, no testimony was taken from any officers or doctors. At the court's request, Dr. Robert G. Bowman, a psychiatrist, reported, in what Appellant's brief expressly states was a "conclusory fashion," that Appellant was seriously mentally ill, and that she was in need of further in-patient hospitalization, and that the inpatient hospitalization contemplated was the least restrictive appropriate treatment.[6] The court raised a concern as to the security at Mayview State Hospital and Dr. Bowman advised the court that Mayview was the only forensic facility in the state available to women.[7] The court directed the Commonwealth to take measures to ensure the security of Appellant and to report these measures to the court. The conference concluded with no further testimony being presented nor evidence received.

On December 6, 1985, Appellant filed a Petition for Reconsideration of the trial court's order of November 8, 1985, which had declared Section 304(e)(4) unconstitutional. Relief was later denied in an opinion filed by Judge Novak on July 21, 1986.

It was argued before the trial court, in response to the Petition for Reconsideration, that the case had already become moot. Arguably at that point, the hearing had already been held, the press had been permitted to be present, a story had been published, and Appellant's twenty day commitment had long since expired. Nevertheless, Judge Novak rejected this argument and based his denial,

6. See Appellant's brief, p. 5. Dr. Bowman was not called to testify by Appellant.

7. There was considerable community concern regarding the security at Mayview, and this concern is well illustrated by newspaper stories set forth as exhibits A through D of Appellee's brief. This concern no doubt explains Appellee's perceived need to have a reporter present at these proceedings.

in part, on the longstanding exception to the mootness doctrine to the effect that questions capable of replication yet evading judicial review are not moot. *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Devlin v. Osser,* 434 Pa. 408, 254 A.2d 303 (1969). We also reject the temptation to apply the mootness doctrine, both because the question at issue *is* capable of replication, and because the sweeping findings of unconstitutionality made by Judge Novak may wreak havoc with certain parts of our Mental Health laws if they are allowed to stand.

Section 303 [8] of the Mental Health Act, the section directly at issue here, provides for so-called "extended" involuntary emergency treatment—not to exceed twenty days. Application for such involuntary treatment must be made to the court of common pleas by the filing of a specific pleading which "shall state the grounds on which ... treatment is believed to be necessary. The application shall state the name of any examining physician and the *substance* of his opinion regarding the mental condition of the person." [9] Counsel must be appointed if the person to be given treatment does not have privately retained counsel and an informal hearing must be conducted within twenty-four hours of the filing of the application by a judge or a mental health review officer. The informal hearing, "if practicable, shall be held at the facility." [10] The rules of evidence do not apply, but witnesses may be heard and questioned. Nowhere in Section 303 is any right to a private proceeding, or to ask for a private proceeding, expressly stated.

Section 304 [11] of the Act provides for court-ordered involuntary treatment—not to exceed ninety days. The procedures that must be followed to effect such treatment are appropriately numerous and formal, and they are spelled

---

**8.** 50 P.S. § 7303.

**9.** 50 P.S. § 7303(a) (emphasis added).

**10.** 50 P.S. § 7303(b).

**11.** 50 P.S. § 7304.

out in detail in Section 304.[12]  The possibility of additional similarly lengthy periods of involuntary treatment is spelled out in Section 305.[13]

It is clear that the scheme adopted by the legislature here envisions that more extensive procedural or "due process" protections will apply as the amount of time a person may be deprived of liberty increases above a bare minimum. For treatment not exceeding seventy-two hours, minimal procedural safeguards are available.[14]  For treatment not to exceed twenty days, a full though informal hearing must be held.  For longer periods of treatment, a full-fledged adjudicatory hearing is necessary.  We think that this is a perfectly appropriate statutory system that fully comports with due process.  See, e.g., Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Judge Henry Friendly, "Some Kind of Hearing," 123 U.Pa. L.Rev. 1267 (1975).

The lower court first assumes, in holding Section 304(e)(4) unconstitutional, that that section is mandatory in that it creates an absolute right in the person for whom treatment is being sought to insist that the hearing be private. Hence, there might often arise a clear conflict between such a right of privacy when requested and the right of the public and the press to an open public hearing.

We express no view on the question of whether Section 304(e)(4) is mandatory or not, since that question is not properly before us.[15]  Section 304(e)(4) simply has no appli-

12.  50 P.S. § 7304(e)(4).

13.  50 P.S. § 7305.

14.  50 P.S. § 7302.

15.  While on its face, Section 304(e)(4) does appear mandatory at first reading, due caution is necessary.  If a private hearing is "requested," this does not necessarily mean, as a matter of verbal logic, that the request *must* be honored.  A recent trial court decision in Lehigh County apparently held that Section 304(e)(4) was discretionary and not mandatory.  *See, In Re Fitzinger,* 13 Med.L.Rprt. (BNA) 1541

cability to an informal hearing held pursuant to Section 303 under this statute. First, the right or procedure is expressly *not* set forth under Section 303. This is consistent with the gradually increasing scale of procedural rights established under this statute and described above. Second, as the facts of this case amply demonstrate, there is good reason not to include a right to a private hearing as a fixed attribute of an informal hearing in the context of mental health treatment. The short term involuntary treatment (not to exceed twenty days), which must be proceeded by an informal hearing, will usually not be based on detailed in depth psychological or psychiatric studies. Indeed, confinement and treatment for twenty days or less would often be needed for the purpose of *acquiring* more extensive psychological or psychiatric studies in the first place. We can discern no reason why the legislature would establish a mandatory mechanism to deal with the revelation at an informal hearing of sensitive personal information (that was originally conveyed to a doctor or psychiatrist) when such problems will seldom, if ever, occur. More to the point, the legislature has not done so.

The lower court properly recognizes that proceedings under Section 303 are by definition informal conferences and that some procedural safeguards do not, by statute, attach. The lower court notes, however, that by custom in Allegheny County, parties against whom involuntary treatment is sought are afforded these procedural rights even in an informal hearing, and that proceedings under Section 303 tend to be more formal then strictly necessary, and hence, that many procedural rights are provided. It is perfectly understandable that this trend toward increasing formality would occur. Nevertheless, this is no excuse to create a potentially troublesome procedural device where none exists nor does it justify over-reaching to resolve a non-existent conflict of constitutional rights.

(Lehigh Cty., August 1, 1986). We express no definitive view on this issue, however.

Should a real conflict develop in an informal hearing under Section 303 between the right to privacy and the general right of the press and public to have the courts conduct open public proceedings,[16] we think that this must be resolved by the trial judge or hearing officer on a case by case basis.

It is evident that factually no constitutional conflict was present in this case. Appellant was not, and realistically could not, have been exposed to a deprivation of a protected constitutional right by the fact that this informal hearing was open to the press and to the public. None of Appellant's medical records was presented as evidence of her mental condition. No information was disclosed which intruded upon Appellant's privacy, and no testimony was given in violation of the psychotherapist-patient privilege. Accounts of Appellant's psychiatric history, containing far more detail than the evidence adduced at the commitment hearing, had already been published in the local newspapers. Thus, because the court would not have been protecting any privacy right of Appellant by closing the hearing, the decision to make it an open hearing was correct. Before closing a judicial proceeding, a trial court must determine that closure will effectively protect the compelling interest endangered by openness and that the information sought to be withheld from public exposure will not be made public anyway. *Globe, supra,* 457 U.S. at 608–610, 102 S.Ct. at 2620–22; *United States v. Brooklier,* 685 F.2d 1162, 1169 (9th Cir.1982); *Philadelphia Newspapers, Inc. v. Jerome,* 478 Pa. 484, 387 A.2d 425 (1978).

Hence, we expressly reject the lower court's conclusion that § 304(e)(4) of the Mental Health Procedures Act is unconstitutional as applied herein. We must also reject the

16. In a concurring opinion in *Commonwealth v. Hayes,* 489 Pa. 419, 414 A.2d 318 (1980), Mr. Justice Kauffmann stated that the provision in Article I, Section 11, of the Pennsylvania Constitution to the effect that "all courts shall be open" creates a strong presumption in favor of the right to public access to adjudicative judicial proceedings. Concurring opinions by Messrs. Justice Larsen and Flaherty indicate that they would extend this requirement even further.

related conclusion that § 304(e)(4) of the Act, as it relates to the opening of the proceedings to the public-at-large, is applicable to a § 303 proceeding.

We, however, affirm the lower court's order opening the informal hearing based upon our independent review of the record and an appropriate balancing of the respective interests of the parties herein; finding no infringement of Appellant's privacy rights in this particular instance.[17]

HUTCHINSON, Former J., did not participate in the decision of this case.

STOUT, J., did not participate in the consideration or decision of this case.

LARSEN, J., concurs in the result.

McDERMOTT, J., files a dissenting opinion.

McDERMOTT, Justice, dissenting.

The purpose of the statute requiring a judicial commitment for psychiatric evaluation is to prevent persons from being seized and imprisoned in a hospital solely at the whim of others; others whose purposes may not be for the benefit of the alleged patient.

The statute has three levels of concern. The first is a 72 hour judicial commitment for the purpose of a diagnosis and prescription if any is required. 50 P.S. § 7302[1]. The second is a judicial commitment for a 20 day period pursuant to an "informal hearing" with the patient having appointed or retained counsel present. 50 P.S. § 7303.[2] The third is for 90 days pursuant to a formal hearing wherein

17. We can discern no problem with respect to standing here on behalf of Appellee, *The Pittsburgh Press*, nor any abuse of discretion on the part of the trial court in permitting Appellee to intervene in the proceedings held in this matter, in order to determine whether there was a right to public access. See Pa.R.C.P. 2327(4); *Capital Cities Media, Inc. v. Toole*, 506 Pa. 12, 483 A.2d 1339 (1984).

1. Act of July 9, 1976, P.L. 817, No. 143 § 302. As amended Nov. 26, 1978, P.L. 1362, No. 324 § 1.

2. *Id.*

the patient is also entitled to counsel. 50 P.S. § 7304.[3] The broad question before us is whether any of these proceedings are open to the public. On this point the statute is clear that whether they are public hearings is a matter left entirely to the patient and counsel. Each step under the statute is governed not by the discretion of the court in opening the hearings but by the request of the alleged patient. In this regard Section 7304(e)(4) provides:

[T]he hearing shall be public *unless* it is requested to be private by the person or his counsel.

50 P.S. § 7304(e)(4) (emphasis added).[4]

The issues before the hearing court are deeply personal, for which the legislature properly left disclosure to the person involved. There is no reason, beyond the person's own request, why the public should be invited to sit beside their bed and overhear their physicians.

I dissent.

---

**3.** *Id.*

**4.** I realize that subsection (e)(4) is intended to apply to 90 day hearings. However, the clear import of the legislature's scheme can be gleaned from the inclusion of the patient's right to dictate the extent of privacy in this most formal of the three procedures. Surely, if the patient can exclude the public at this latter hearing the public would have no greater rights at the more intimate informal hearings.