584 A.2d 997

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Joseph Peter MILICE, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 21, 1990.

Filed Jan. 8, 1991.

Salvatore F. Bello, Norristown, for appellant.

William Carpenter, Asst. Dist. Atty., Norristown, for Com., appellee.

Before CIRILLO, President Judge, and MONTEMURO and MONTGOMERY, JJ.

PER CURIAM.

This is an appeal from an order entered pursuant to the Mental Health Procedures Act, 50 P.S. § 7101 *et seq.*, continuing appellant's involuntary commitment to Farview State Hospital. We affirm.

On February 5, 1988, appellant, without provocation, attacked several of his neighbors, stabbing three adults, chasing and attempting to stab two children and stabbing a dog. As a result, criminal charges were brought and appellant entered a plea of not guilty by reason of insanity.

After a bench trial on June 30, 1988, appellant was found not guilty by reason of insanity. The Commonwealth then filed a petition to have appellant committed for involuntary psychiatric treatment. After a hearing on August 25, 1988, the court ordered appellant to be committed to Farview State Hospital for a one-year period of inpatient psychiatric hospitalization. At the end of this initial commitment, a petition was filed seeking an order for continued involuntary commitment and requesting a transfer to a civil or VA hospital. Hearings were held on August 25, 1989, and October 2, 1989, at the conclusion of which the instant order was entered. This appeal followed.

Appellant initially contends that the trial court erred in denying his request to close the hearings to the public.[1] Relying on 50 P.S. § 7304(e)(4), appellant contends that the court was required to close the hearings upon his request. Section 7304(e)(4) provides: "The hearing shall be public unless it is requested to be private by the person or his counsel." Appellant interprets this language to mandate closing the hearing upon the mere request of the respondent. We do not agree.

The common law tradition of open and public trials, in both the civil and criminal areas, is centuries old. See, *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059 (3rd Cir.1984). In Pennsylvania, this tradition is embodied in Article I, § 11 of the Pennsylvania Constitution: "All courts shall be open." The principle of openness is also supported by the First Amendment to the United States Constitution. *Id.; Hutchison v. Luddy*, 398 Pa.Super. 505, 581 A.2d 578 (1990). Only in rare instances is the public routinely excluded from the courtroom. For example, the Juvenile Act provides that "the general public shall be excluded from hearings under this chapter." 42 Pa.C.S. § 6336(d). Even that statute, however, excludes only those persons who

1. Although the hearings have already been held, this issue falls under the exception to the mootness doctrine being a question capable of replication yet evading judicial review. *Matter of Seegrist*, 517 Pa. 568, 539 A.2d 799 (1988).

have no proper interest in the proceeding. The victim, counsel for the victim and persons accompanying a party or a victim for his or her assistance as well as persons having a proper interest in the proceeding or in the work of the court are properly admitted by the juvenile court. *Id.* The Rules of Civil Procedure permit the trial court to exclude the public or persons not interested in the proceedings only when the court deems such exclusion "to be in the interest of the public good, order or morals." Pa.R.Civ.P. 223.

In the instant case, the language of the statute itself is mandatory only in stating that the hearing *shall* be public unless requested otherwise. As noted by our Supreme Court: "If a private hearing is 'requested,' this does not necessarily mean, as a matter of verbal logic, that the request *must* be honored." *Matter of Seegrist,* 517 Pa. 568, 574 n. 15, 539 A.2d 799, 802 n. 15 (1988). Absent more explicit statutory language and in light of the lengthy and powerful tradition of openness, we are unable to conclude that the Mental Health Procedures Act mandates closure of a hearing on the mere request of the patient. It was therefore within the discretion of the trial court whether or not to grant appellant's request.

This discretion is not absolute. *Katz v. Katz,* 356 Pa.Super. 461, 514 A.2d 1374 (1986). In *Katz,* this court adopted the standard set forth in *Publicker Industries, supra,* that closure is warranted where "disclosure will work a clearly defined and serious injury to the party seeking closure." The only reason advanced by appellant herein was that the hearing would involve confidential medical testimony about his mental illness. In any hearing under the Mental Health Procedures Act, the evidence is likely to involve at least some confidential medical testimony. Nevertheless, § 7304(e)(4) specifies an open hearing. Thus, something more must be required in order to demonstrate that the hearing should be closed. In the instant case, the other factors considered by the trial court amply support the decision not to close the hearing. The court first noted that because appellant entered an insanity plea,

he himself placed the issue of his mental illness before the court in an open criminal proceeding. Further, the criminal proceeding was widely covered by the press. Therefore, the initial accounts of appellant's mental illness were already public knowledge. Furthermore, although some of the testimony in the current hearing dwelt on specifics of appellant's illness, much of the testimony involved a comparison of the various institutions to which appellant was seeking transfer. Of the experts who testified, two testified only to the respective security and therapeutic aspects of their facilities and two were experts who had previously testified at the criminal trial. Only one of the experts was a treating psychiatrist who had a physician-patient relationship with appellant. The trial court also considered the public interest in the hearing, finding it to be substantial.

> "The appellant had engaged in a violent outburst seriously injuring and terrorizing neighbors in the community in which he lived prior to this commitment. There is always a significant public interest in civil commitment proceedings which arise after a criminal acquittal by reason of insanity which is akin to the public interest in criminal trials. The interest in this case was heightened because the victims of the crime were appellant's neighbors and had legitimate concerns about his potential return to their community or to what they perceived would be a less secure facility very close to that community."

Opinion at 15.

Furthermore, the court considered the benefit to appellant should the court decide that a change in treatment facility is appropriate or that continued commitment is no longer required.

> "The process inevitably breeds tension between appellant's interest in fully restoring his mental health and returning to the community and public pressure to continue his commitment. Public scrutiny assures that the court's decision to continue commitment is based on the record developed at the hearing. In addition, should the court decide that commitment is no longer indicated,

openness serves to put the facts forward, educate the public and allay fears."

Opinion at 16.

We conclude that the trial court considered all the relevant factors in making its decision and did not therefore abuse its discretion in refusing to close the hearing.

■ Appellant also contends that the trial court's finding that Farview State Hospital provides the least restrictive environment consistent with appellant's needs for treatment was against the weight of the evidence. In its opinion, the trial court has thoroughly reviewed the evidence, the applicable case law and the reasons for its findings. We see no need to add anything to that opinion and therefore affirm this finding based on the trial court's opinion.

Order affirmed.

MONTEMURO, J., files a concurring and dissenting opinion.

MONTEMURO, Judge concurring and dissenting:

I agree with the majority that the trial court's determination that Farview State Hospital provides the least restrictive environment for rehabilitating appellant was not against the weight of the evidence. I must dissent, however, from what I believe to be the majority's disregard of the plain meaning of the statute concerning court-ordered involuntary treatment.

Title 50 Pa.S.A. § 7304(e)(4) states: "The hearing shall be public unless it is requested to be private by the person or his counsel." The definition of unless is "except on the condition that: under any other circumstance that." *Webster's Ninth New Collegiate Dictionary* at 1292, 1986. Given this definition, I read the statute to mean that if a person requests a private hearing, then the hearing should be private; there is no language contained in the statute which supports the majority's conclusion that it is within the discretion of the hearing judge to decide whether the hearing will be public. In the instant case, appellant and

his counsel expressed appellant's desire for a private hearing; therefore, it should have been private.

For support, the majority relies on the recent Pennsylvania Supreme Court case of *Matter of Seegrist,* 517 Pa. 568, 539 A.2d 799 (1988). There, Sylvia Seegrist was before the court for an informal conference conducted pursuant to Section 303 of the Mental Health Procedures Act. Under that section, an individual can only be involuntarily committed for up to twenty days, and unlike Section 7304 applicable herein, there is no provision for a private proceeding. In explaining why Ms. Seegrist's request for a private conference was correctly denied, the supreme court stated:

> None of Appellant's medical records was presented as evidence of her mental condition. No information was disclosed which intruded upon Appellant's privacy, and no testimony was given in violation of the psychotherapist-patient privilege. Accounts of Appellant's psychiatric history, containing far more detail than evidence adduced at the commitment hearing, had already been published in the local newspapers. *Thus, because the court would not have been protecting any privacy right of Appellant, by closing the hearing,* the decision to make it an open hearing was correct.

*Seegrist, supra,* 517 Pa. at 576, 539 A.2d at 803 (emphasis supplied).

By contrast to *Seegrist,* in the instant case appellant's medical records were presented as evidence and were discussed by psychiatrists involved in appellant's case. *See* N.T., August 25, 1989 at 44–45, 53; N.T., October 2, 1989 at 6–7. The evidence about appellant's medical and psychiatric history was detailed and extensive, covering more than what the newspapers previously had access to. Moreover, the circumstances were different, as *Seegrist* merely involved a current placement, whereas the instant case involved a petition by Farview State Hospital for appellant to be transferred to another institution, to which he would be committed for at least a year. It was not appellant's first commitment proceeding; thus, a great deal of information from the Farview doctors about appellant's progress was

brought to the court's attention. Appellant's privacy rights were infringed upon in this case because appellant's attorney was forced to call appellant's doctors to the witness stand and violate the physician-patient privilege in front of community members and the press.

The majority analyzed the factors that the trial court considered when deciding to hold a public hearing, but the analysis is not convincing. The majority states that "the only reason advanced by appellant herein was that the hearing would involve confidential medical testimony about his mental illness. In any hearing under the Mental Health Procedures Act, the evidence is likely to involve at least some confidential medical testimony." Majority Opinion at 99. As the statute's language and the supreme court's interpretation indicate, this is exactly what the legislature wanted to protect against, that is, allowing the public to hear confidential testimony regarding the deeply personal details of the individual's mental illness.

The majority quote from *Seegrist, supra*, 517 Pa. at n. 15, 539 A.2d at 802 n. 15, is both incomplete and dicta. The entire note 15 reads:

> While on its face, Section 304(e)(4) does appear mandatory at first reading, due caution is necessary. If a private hearing is "requested," this does not necessarily mean, as a matter of verbal logic, that the request *must* be honored. A recent trial court decision in Lehigh County apparently held Section 304(e)(4) was discretionary and not mandatory. *See, In re Fitzinger....* We express no definitive view on this issue, however.

*Id.* In the main text of the *Seegrist* opinion the Court also states that "[w]e express no view on the question of whether Section 304(e)(4) is mandatory or not...." *Id.* It is incorrect, then, to infer that *Seegrist* stands for the proposition that Section 304(e)(4) gives the trial court discretion to hold a public hearing despite a person's request for a private one.

Furthermore, the Court in *Seegrist* recognized that "the scheme adopted by the legislature here envisions that more

extensive procedural or 'due process' protections will apply as the amount of time a person may be deprived of liberty increases above a bare minimum." *Id.,* 517 Pa. at 574, 539 A.2d at 802. Sylvia Seegrist was only being involuntarily committed for 20 days whereas the appellant in the current case was having a formal adjudicatory hearing for a commitment of one year. Appellant's interests in a closed hearing and more procedural rights, then, are greater than Seegrist's because his potential loss of liberty is much longer. Holding a private hearing would be consistent with the supreme court's analysis of the Mental Health Procedures Act and its scheme of increasing protections as individuals face longer commitments.

For support, the majority relies on its assertion that appellant placed the issue of his mental illness before the public in his criminal trial, and therefore the public was already aware of his diagnosis. This factor is less than determinative, however, as the criminal hearing was over a year before the instant *civil* proceeding, and at the criminal trial appellant had no choice about pleading as he did. When appellant acted, he was insane, and he pled as such. Further, if this were the test, then in any case in which a defendant pleads insanity, he or she will lose the right to have a closed hearing under the Mental Health Procedures Act. Such an interpretation would render § 304(e)(4) meaningless. During a year at Farview, appellant underwent treatment and made some progress, about which doctors testified. This new information, in all its detail, was not known to the public, nor was it the public's business to know.

The majority also relies on the trial court's finding that the victims and neighbors had a legitimate interest and concern about appellant's possible return to the neighborhood. This argument is unpersuasive. The record is clear that appellant is severely ill: his illness was, in fact, judicially determined. It is highly doubtful that he will ever leave an institutional setting, much less return to the neighborhood. *See* N.T., August 25, 1989 at 41, 54, 57; N.T.,

October 2, 1989 at 73 (doctors testify that it is unlikely that appellant will be able to leave hospital setting).

Finally, the majority examines the fact that only some of the doctors that testified had a physician-patient relationship with the patient, while the others merely testified about the facilities and programs at various institutions. The number of witnesses breaking the physician-patient privilege is irrelevant; for even one to have done so violates the individual's privacy rights.

Individuals who are, and must be, shut away in mental institutions have little freedom and little self esteem. The statute permits the court system to provide these people a measure of dignity. While there may be some public interest in allowing the public to sit in on appellant's hearing, I believe that our Legislature has made the determination, codified in § 7304(e)(4), that in cases as the instant one, the choice as to whether the hearing will be public belongs to the individual, not to the court. Appellant and his attorney expressed his desire for a private hearing because they felt that a public hearing would be embarrassing and counterproductive to his therapy. The public does not need to know what drug appellant is on or what secure institution he is living in. As Justice McDermott stated in his dissenting opinion in *Seegrist*, "[t]here is no reason, beyond the person's own request, why the public should be invited to sit beside their bed and overhear their physicians," 517 Pa. at 578, 539 A.2d at 804 (McDermott, J., dissenting).

For the above reasons, I dissent.