626 A.2d 1218

**R.W., Appellee,**

v.

**Warren W. HAMPE, M.D., Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 8, 1992.

Filed June 18, 1993.

John S. Bagby, Jr., Philadelphia, for appellant.

Daniel L. Thistle, Philadelphia, for appellee.

Before CAVANAUGH, BECK and POPOVICH, JJ.

BECK, Judge.

In this appeal we decide whether the plaintiff in a malpractice action may be identified in the caption and record by her initials alone. We hold that such closure is not warranted in this case, and reverse the trial court's order granting the Petition to Partially Seal the Record.

Appellee instituted this malpractice action against appellant, alleging that appellant negligently rendered psychiatric care. Appellee's full name appeared on the caption of the complaint. About a year after she filed her complaint, appellee filed a Petition to Partially Seal the Record, alleging that because of the intimate nature of her claim, any public disclosure of her name or other information that could identify her would "cause extreme, unnecessary embarassment." [1] Appellant opposed the petition, arguing that this partial closure would be in violation of the United States Constitution, the Pennsylvania Constitution, and the common law.

The trial court granted appellee's petition, and ordered that "Plaintiff's name, address, and any other information that could identify her is thus sealed and the caption will now read 'R.W. vs. Warren W. Hampe, M.D.'" In its opinion, the trial court reasoned that the closure order was warranted because "plaintiff's interest in confidentiality outweighs the presumption of accessibility." The trial judge explained his decision as follows:

> [P]laintiff initially consulted defendant, a psychiatrist, after experiencing difficulties resulting from her "divorce and several family tragedies, stress from overwork, by the pressure of everyday life and rearing her children as a single parent." During her approximate one year of therapy, plaintiff alleges she revealed many confidences concerning the aforementioned problems. She also contends she confided details of her relationship with another of defendant's

1. The Petition specifically requested that appellant's identity remain public. Appellee argues that this is justified by the fact that appellant refused to agree to a stipulation to seal the entire record.

patients, particularly those of a sexual and emotional nature. After weighing the equities in this case, including the almost unfettered freedom that anonymity provides, the Court determined that plaintiff, as a professional in the local community, and her children, should not be subjected to the ridicule and scorn which would certainly follow given the personal and intimate matters plaintiff necessarily included in the record.

Trial Ct. Opinion at 4–5 (footnote omitted).

Before we address the propriety of the trial court's decision, we must decide whether the order sealing the record is appealable. "It is axiomatic that an appeal will lie only from a final order unless otherwise permitted by statute or rule." *Fried v. Fried,* 509 Pa. 89, 93, 501 A.2d 211, 213 (1985); *Katz v. Katz,* 356 Pa.Super. 461, 514 A.2d 1374 (1986). Although the order appealed from in this case is interlocutory, we find that it is appealable under the "collateral order" doctrine. *See Pugar v. Greco,* 483 Pa. 68, 394 A.2d 542 (1978); *Kronz v. Kronz,* 393 Pa.Super. 227, 574 A.2d 91 (1990); *Katz, supra.* An interlocutory order is directly appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the questions presented are such that if review is postponed until a final judgment is rendered in the case the claimed right will be irreparably lost. *Id.; Bollinger by Carraghan v. Obrecht,* 122 Pa.Commw. 562, 552 A.2d 359 (1989). *See also Hutchison v. Luddy,* 398 Pa.Super. 505, 581 A.2d 578 (1990), *rev'd on other grounds,* 527 Pa. 525, 594 A.2d 307 (1991) (per curiam).[2]

We hold that the order partially sealing the record is appealable as a collateral order. It is separable from the main cause of action—a lawsuit for personal injuries allegedly arising from medical malpractice—and its effect is too important

---

**2.** In *Hutchison,* this court affirmed an order sealing the record in part, and reversed the trial court's denial of a motion to seal discovery. As to the discovery portion of the order, our supreme court reversed the superior court's decision. The supreme court found that the discovery portion of the case was not appealable under the collateral order doctrine, and it was not a final appealable order.

to be denied review. If the order is left to stand until disposition of the merits, any harm claimed by appellant already will have irrevocably occurred. *Bollinger, supra.*

As we turn to the merits of the appeal, we first note that a trial court's decision to grant or deny closure of the record will be reversed by this court only upon a determination that the trial court abused its discretion. *Hutchison, supra* at 511, 581 A.2d at 581 (*citing Stenger v. Lehigh Valley Hosp. Center,* 382 Pa.Super. 75, 78, 80, 554 A.2d 954, 954, 956 (1989)). Because we find such an abuse of discretion in this case, we reverse the trial court's order to seal the record.

In order to justify closure or sealing the record a party must overcome the common law presumption of openness.[3] *Hutchison, supra; Katz, supra.* The existence of a common law right of access to judicial proceedings and inspection of judicial records is beyond dispute. *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059 (3d Cir.1983), *citing United States v. Criden,* 648 F.2d 814, 819 (3d Cir.1981). In *Publicker,* the Third Circuit Court of Appeals analyzed the origins of this presumption:

3. There are two methods of analysis of the competing interests involved in a request for closure. In the "first amendment" or constitutional analysis, the presumption of openness may be rebutted by a claim that the denial of public access "serves an important governmental interest and there is no less restrictive way to serve that government interest." *Hutchison, supra.* at 513, 581 A.2d at 582 (*citing Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059, 1070 (3d Cir.1983)). Under this method, which is based in the First Amendment of the United States Constitution and Art. 1, sec. 11 of the Pennsylvania Constitution, it must be established that the "material is the kind of information that the courts will protect and that there is good cause for the order to issue." *Id.* This first amendment analysis often is applied in cases where the press intervenes in a private action to ensure its access to judicial proceedings. *See, e.g., Publicker, supra; Hutchison, supra.* The second method of analysis is the common law balancing approach, where a party must show that her personal interest in secrecy outweighs the traditional presumption of openness. *See Bank of America Nat'l Trust & Savings Ass'n v. Hotel Rittenhouse Ass'n,* 800 F.2d 339 (3d Cir.1986). Because the issue before us can be resolved under the common law, we need not engage in the constitutional analysis. *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983); *Ballou v. State Ethics Comm'n,* 496 Pa. 127, 436 A.2d 186 (1981); *Com. v. Kennedy,* 413 Pa.Super. 95, 604 A.2d 1036 (1992). *See also Bank of America, supra.*

[Sir Matthew] Hale [, M. Hale, *History of The Common Law of England*, 163 (C. Gray ed. 1971),] served as authority for Williams Blackstone when he explained why trials generally were conducted in public:

> This open examination of witnesses *viva voce*, in the presence of all mankind, is much more conducive to the clearing up of truth, than the private and secret examination taken down in writing before an officer, or his clerk....

8 W. Blackstone, *Commentaries* 373.

.    .    .    .    .

The explanation for and the importance of this public right of access to civil trials is that it is inherent in the nature of our democratic form of government. Thus, Justice Oliver Wendell Holmes, when he served as a justice on the Massachusetts Supreme Court, declared that public access to civil judicial proceedings was of "vast importance" because of "the security which publicity gives for the proper administration of justice." "It is desirable that the trial of [civil] causes should take place under the public eye," Holmes continued,

> not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.

Wigmore on Evidence reaffirms the beneficial effects of public access to civil judicial proceedings identified centuries ago by Hale and Blackstone. Wigmore observes that public access "plays an important part as a security for testimonial trustworthiness...." Public proceedings are the means by which this testimonial of trustworthiness is achieved. Wigmore identifies other beneficial effects of public access to civil as well as criminal trials. It enhances the quality of

justice dispensed by officers of the court and thus contributes to a fairer administration of justice:

(a) Subjectively, a wholesome effect is produced, analogous to that secured for witnesses, upon all the officers of the court, in particular, upon judge, jury, and counsel. In acting under the public gaze, they are more strongly moved to a strict conscientiousness in the performance of duty.. In all experience, secret tribunals have exhibited abuses which have been wanting in courts whose procedure was public.

Public access to civil trials also provides information leading to a better understanding of the operation of government as well as confidence in and respect for our judicial system.

(c) The educative effect of public attendance is a material advantage. Not only is respect for the law increased and intelligent acquaintance acquired with the methods of government, but a strong confidence in judicial remedies is secured which could never be inspired by a system of secrecy.

*Publicker, supra* at 1068–1070 (citations omitted). In order to rebut this well established presumption of openness, and to obtain closure of judicial proceedings and records, a party must demonstrate "good cause." *See* Goodrich Amram 2d § 223(a):7. Good cause exists where closure is "necessary in order to prevent a clearly defined and serious injury to the party seeking" it. *Id.*

Appellee contends that her interest in secrecy sufficiently rebuts the presumption of openness. *See Bank of America National Trust &. Savings Ass'n v. Hotel Rittenhouse Ass'n,* 800 F.2d 339 (3d Cir.1986) (applying common law balancing test in measuring interest in secrecy against presumption of public access). In her Petition to Partially Seal the Record, appellee argued that "[t]he nature of this case is such that it would cause [her] significant embarassment if the personal details of her life and therapy with Dr. Hampe were open to public for view." Appellee asserted that there "is no need for [her] identity to be open to, the public and press." The trial

court found that appellee's interest in avoiding "significant embarassment" outweighed the presumption of openness, and ordered the record sealed to protect appellee's identity.

▪ Pennsylvania Rule of Civil Procedure 223 grants the trial court discretion to make and enforce rules and orders "[r]egulating or excluding the public or persons not interested in the proceedings whenever the court deems such regulation or exclusion to be in the interest of the public good, order or morals." Pa.R.Civ.P. 223(a)(4). This discretion must be exercised "subject to the requirements of due process of law and of the constitutional rights of the parties." *Id.* Appellee argued below that Rule 223 authorizes sealing the record in order to protect her identity. It is not clear that Rule 223, which specifically refers only to the procedures to be applied during the conduct of a jury trial, is helpful to appellee at this stage of the proceedings.

▪ Moreover, appellee has cited no case in her brief to this court which authorizes the use of initials to protect the identity of an adult plaintiff in a malpractice lawsuit. In fact, our research has revealed only cases that preclude such limited identification. *See e.g., A. McD. v. Rosen,* 423 Pa.Super. 304, 621 A.2d 128 (1993) (in a psychiatric malpractice action, appellant "failed to cite authority or otherwise demonstrate that she, an adult plaintiff, can pursue an action at law by a designation other than her proper name" and therefore her full name, not initials, must be used); *Doe v. Johns–Manville Corp.,* 15 D. & C.3d 135 (Bucks Cty.1980) (plaintiff could not bring lawsuit under pseudonym despite claim that he would be subject to ridicule and ostracism if he used his real name). *See also* Pa.R.Civ.P. 1018 (requiring names and addresses of parties in caption of lawsuit). The obvious exceptions to this practice are cases involving minors and incompetents, and these certainly are inapplicable here.

In her request to use initials, appellee essentially has requested closure of certain aspects of this judicial proceeding. There are few instances in this Commonwealth where closure will be permitted over the objection of other parties.

Divorce cases present one exception to the general rule of openness. *See Katz, supra.* The subject matter of divorce litigation serves, in many cases, "only to embarass and humiliate" the litigants. *Id.* 356 Pa.Super. at 472, 514 A.2d at 1379. The details of divorce "involve matters which are essentially private in nature and ... lack any useful, public purpose." *Id.* The legislature has recognized this peculiar aspect of divorce litigation by authorizing the court to preclude trial by jury where it "cannot be had without prejudice to the public morals." 23 Pa.C.S.A. § 305(b). Similarly, the Juvenile Act provides that "the general public shall be excluded from hearings under this Chapter," for the salutary reasons of protecting the privacy interests of minors. 42 Pa.C.S.A. § 6336(d). *See also* 42 Pa.C.S.A. § 6308 (provides for limited public access to records relating to juvenile proceedings). No similar statute exists regarding psychiatric malpractice actions.

Our courts also imply that closure may be proper in criminal cases where a fair trial would be impossible due to pre-trial publicity, or where the safety of informants and the integrity of an ongoing investigation are at stake. *Cf. Com. v. Fenstermaker,* 515 Pa. 501, 530 A.2d 414, 420 (1987) (presumption of openness was not sufficiently overcome to justify sealing arrest warrant affidavits).

The potential disclosure of mental illness does not necessarily mandate the closure of judicial proceedings. *See Com. v. Milice,* 401 Pa.Super. 96, 584 A.2d 997 (1991). The preference for access should prevail even though the Mental Health Procedures Act specifically allows hearings to be closed if "it is requested to be private by the person or his counsel." 50 Pa.C.S.A. § 7304(e)(4). *Milice, supra* at 98, 584 A.2d at 998. *See also Matter of Seegrist,* 517 Pa. 568, 539 A.2d 799 (1988). Closure of a mental health hearing may be justified when a person's medical records or other information intruding on one's privacy will be presented, and where testimony will be given which ordinarily is protected by the doctor-patient privilege. *Seegrist, supra.*

However, cases which protect privacy interests under the Mental Health Procedures Act, Divorce Code and Juvenile Act are readily distinguishable from this one. Here, appellee initiated a malpractice action—an adversarial proceeding—in which she placed certain intimate issues before the court. There is no dispute that she thereby waived any protection that previously may have inured under the physician-patient privilege. *Moses v. McWilliams*, 379 Pa.Super. 150, 549 A.2d 950 (1988). *See also* 42 Pa.C.S.A. § 5929 (physician allowed to disclose patient information in civil matter brought by patient for damages on account of personal injuries). The pursuit of this action unquestionably will cause appellee embarrassment; any psychiatric and possibly other medical malpractice lawsuit will involve the revelation of personal matters. *See A. McD., supra.* However, as the trial court aptly noted, the anonymity sought by appellee would afford her "almost unfettered freedom." Tr.Ct.Opinion at 5.

It is precisely this "freedom" that the common law presumption of openness is designed to curtail. The danger of allowing adult plaintiffs to bring and maintain lawsuits by their initials alone is self-evident. Appellant was named as defendant in this malpractice action, and certain allegations were lodged against him; in turn, he is required to defend against the charges in a public forum. He asserts that he should be afforded the right to attempt to clear his name and reputation in open proceedings. He argues that appellee should not be permitted to testify anonymously against him without the scrutiny of the public eye. Appellee is not a third party whose credibility and demeanor are irrelevant. Nor is she a minor whose privacy interests are specially protected by statute.

Moreover, this is not a private matter such as a divorce or a mental health proceeding, but rather an adversarial proceeding which has a "public purpose." *Katz, supra. Cf. Com. v. J.T.*, 279 Pa.Super. 127, 420 A.2d 1064 (due to "regrettable and embarassing circumstances surrounding" party's commitment under Mental Health and Mental Retardation Act, court granted request that her name not be used in published

opinion). The medical community and the public generally have a great interest in observing and learning from medical malpractice actions, and other adversarial proceedings.[4]

We are not unsympathetic to appellee's position. Our review of the sparse details in the record reveals that it does contain embarrassing information, particularly of a sexual nature. However, the fact that a case involves such information does not necessitate the use of a caption which identifies the plaintiff by initials alone. *See, e.g., Hutchison v. Luddy, supra* (involving sexual abuse of plaintiff by priest); *Stenger v. Lehigh Valley Hosp. Center, supra* (negligence action for transmission of AIDS involving intimate personal details of plaintiffs' lives, their sexual practices, idiosyncracies, and personal hygiene).[5] We do not decide whether such a caption would be permissible if all parties agreed to its use.

Appellant argues that if appellee may be identified by her initials alone, he will be hampered unfairly in his ability to defend himself. For example, appellant may be prevented from independently discovering information from witnesses and medical providers; a subpoena for medical records would be ineffectual if it could not contain appellee's full name. Appellant also claims that he cannot retain a medical expert due to the fact that a potential expert could not be given the appellee's name to check for a conflict of interest. Finally, appellant argues that his free speech rights have been subjected to a prior restraint by the trial court, as he cannot discuss the case by reference to appellee's full name.[6]

4. Appellee argues that the public can learn just as much from this case if it is called "R.W. v. Hampe" as it will if her full name is revealed. However, appellee's contention that there "is no need for [her] identity to be open to the public" misstates the law. It is not the public that must show why a proceeding should remain open but rather she who must establish that her interest in avoiding embarrassment outweighs the presumption of openness.

5. There is no indication that a request for identification by initials was ever made in these cases.

6. The trial court's order is not a model of clarity, and we therefore cannot be certain whether it intended that each of these discovery problems would result. We must assume that, in order to accomplish

We agree that appellant will be placed at an unfair disadvantage if we were to affirm the trial court's order. Appellee placed appellant's full name and reputation into the public arena when she chose to file this lawsuit. Although the parties apparently did discuss entering into a stipulation whereby the record would be sealed by consent, appellant ultimately did not agree. We cannot permit one party to hide her identity under these circumstances.[7]

At the same time, we note that the confidentiality of discovery proceedings and documents may be preserved. *Stenger, supra* 382 Pa.Super. at 89–90, 554 A.2d at 960–61 ("intensely private information" may be protected during discovery in negligence action). In *Stenger,* "intensely private information" related to the plaintiffs' contraction of the AIDS virus after a blood transfusion at defendant hospital was the subject of a motion for protective order. The court granted the motion, and the press intervened to pursue its alleged right of access to certain discovery documents. This court upheld the protective order, reasoning that private documents collected during discovery are not judicial records that are filed with the court, and therefore are not subject to public access. *Id. See also Hutchison, supra; Bank of America, supra.*

However, this limited protection may be accomplished by narrower means than the sealing order issued below. For example, appellee may move for a protective order pursuant to our rules in order to avoid unreasonable embarrassment, annoyance or burden, and to protect certain information during pre-trial discovery.[8] Pa.R.Civ.P. 4012. *See Stenger, su-*

its goal of protecting appellee's identity, the order was meant to apply to all aspects of this proceeding.

**7.** Appellee contends that appellant refused to agree to the stipulation because he knows that appellee will not continue this lawsuit if she is forced to reveal her identity. Obviously, we cannot condone such tactics. However, some degree of embarrassment or revelation of personal matters accompanies every type of medical malpractice action, and we note that appellee originally did file this lawsuit under her full name. She evidently was prepared at that time to disclose her identity during these proceedings.

**8.** We note that appellant should not be permitted to undermine the effect of such a protective order by including discovery documents or

_pra; Bank of America, supra._ "[A]ccess rights to litigation are at their nadir" during the discovery phase. _Stenger, supra_ at 83, 554 A.2d at 958. It is clear, however, that once at trial, the presumption of openness is in place. _Id. See also Hutchison by Hutchison v. Luddy,_ 417 Pa.Super. 93, 611 A.2d 1280, 1291 (1992) (pretrial depositions and interrogatories are not available for public inspection until their use at trial).

Therefore, we vacate the trial court's order granting appellee's petition to partially seal the record, and hold that appellee may not hide her identity by the use of initials in the caption and record. We remand for further proceedings consistent with this opinion.

Reversed and remanded. Order vacated. Jurisdiction relinquished.

POPOVICH, J., files a Dissenting Statement.

POPOVICH, Judge, dissenting.

Since I perceive no abuse of discretion, I would affirm the trial court's order.

portions thereof in pleadings or other materials filed with the court. If such materials must be filed, for example, in a motion for summary judgment, the protection afforded under such an order still would apply to the discovery material until the commencement of trial. _See Hutchison by Hutchison v. Luddy,_ 417 Pa.Super. 93, 611 A.2d 1280, 1291 n. 8 (1992).