COMMONWEALTH of Pennsylvania

v.

William SARTIN.

Appeal of the SCRANTON TIMES,
Sunday Times and Scranton
Tribune.

Superior Court of Pennsylvania.

Argued Oct. 1, 1997.

Filed Feb. 26, 1998.

Samuel E. Klein, Philadelphia, for appellant.

Before JOHNSON, FORD ELLIOT and MONTEMURO *, JJ.

JOHNSON, Judge:

The Scranton Times, the Sunday Times, and the Scranton Tribune (collectively, "the Newspapers") appeal from the order that (1) partially unsealed the transcript of a previously held in camera hearing and (2) released, in redacted form, correspondence between the Honorable Frank P. Eagen and the Disciplinary Board of the Supreme Court of Pennsylvania ("the Disciplinary Board"). Because we conclude that the order in question is not immediately appealable, we quash the Newspapers' appeal.

In October 1996, Judge Eagen was presiding over the criminal trial of William Sartin, who had been charged with, among other things, the rape and murder of a seven-year-old girl. Additionally, at this same time, the

* Retired Justice assigned to the Superior Court.

Office of the Pennsylvania Attorney General and the Lackawanna County District Attorney's Office were investigating the alleged misappropriation of assets of certain Lackawanna County estates by their court-appointed guardians. Because Judge Eagen in his former capacity as an orphan's court judge, had approved the appointment of at least one of the guardians under scrutiny, it became apparent that he might become involved in the grand jury investigation.

While jury selection for Sartin's trial was taking place, an attorney not directly connected with Sartin's case, allegedly made slanderous remarks to Judge Eagen. Judge Eagen promptly reported this incident through a number of letters to the Disciplinary Board. Although it is unclear what the remarks were, a review of Judge Eagen's letters in their redacted form indicates that he felt that the statements in question had an effect on the course of Sartin's trial.

In the meantime, Sartin's attorney, James Walker, noticed that Michael Barrasse, the district attorney assigned the task of prosecuting Sartin, was also involved in the aforementioned grand jury proceedings and investigation. Attorney Walker then raised the issue of whether the grand jury investigation might impact Sartin's trial and create the appearance of impropriety. On November 4, 1996, an *in camera*, on the record hearing was held to address this matter out of which, the transcript in question was produced. On November 6, Judge Eagen recused himself, and Sartin's trial was assigned to the Honorable Carmen Minora. One week later, Judge Eagen formally entered an order that sealed the November 4, 1996, transcript.

Seeking to gain access to the sealed transcript, the Newspapers filed a petition to intervene and a petition to remove the seal. Both petitions went unopposed. Without holding a hearing, Judge Minora entertained the Newspapers' petitions and issued an order that partially unsealed the transcript and released Judge Eagen's correspondence with the Disciplinary Board with the qualification that all proper names and references to proper names be deleted in both sets of materials. The Newspapers now appeal, contending that they have a constitutional and/or common law right of access to the full, unredacted transcript of the November 4, 1996, proceeding, and that they were denied due process of law by Judge Eagen's alleged continued involvement in the matter after his recusal.

However, before we can address the merits of these arguments, we must determine whether the order in question is one that is subject to immediate appellate review. The Newspapers maintain that this Court has jurisdiction under the collateral order rule; thus asserting that their right of access to the transcript is separable from the underlying action, that it is too important to be denied review, and that, if postponed, this right will be irreparably lost. Brief of Appellant at 2–3. We disagree.

The general rule is that, unless otherwise permitted by statute, only appeals from final orders are subject to appellate review. *Pugar v. Greco*, 483 Pa. 68, 72–73, 394 A.2d 542, 544–45 (1978). A final order is one that disposes of all claims or all parties. Pa.R.A.P. 341(b). This principle, designed to prevent piecemeal appeals, is subject to a narrowly construed exception known as the collateral order rule. *See Commonwealth v. Johnson*, — Pa. —, —, 705 A.2d 830, 834 (1998); *Watson v. City of Philadelphia*, 665 A.2d 1315, 1317 (Pa.Cmwlth.1995). The collateral order rule, first announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and now set forth in Pennsylvania Rule of Appellate Procedure 313, provides that appeals may be taken from orders that are "[1] separable from and collateral to the main cause of action [2] where the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). This third prong has also been interpreted to mean that the matter must be effectively unreviewable on appeal from final judgment. *Johnson, supra*, 705 A.2d at 832, citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

While in *R.W. v. Hampe*, 426 Pa.Super. 305, 626 A.2d 1218 (1993) this Court permit-

ted an immediate appeal from an order that partially sealed a judicial record, we are not aware of any Pennsylvania case law standing for the broad notion that an order partially unsealing the record is immediately appealable under the collateral order rule. In *Hampe,* given the intimate nature of plaintiff's malpractice claim against her physician, the trial court partially sealed the record to eliminate information that might make the plaintiff's identity public. When confronted with the physician's immediate appeal, this Court held that the order was reviewable under the collateral order rule. *Id.* 626 A.2d at 1219. As explanation we stated only that: "[i]f the order is left to stand until disposition of the merits, any harm claimed by the [physician] already will have irrevocably occurred." *Id.* In *Hampe,* any discussion of the right in danger of being denied review and how it might be irreparably lost is conspicuously absent. Thus, although the instant case also deals with a partially sealed record, we cannot rely on *Hampe* for the proposition that the collateral order rule applies to all cases dealing with partially sealed records. Instead, an examination of the record in light of the requirements of the collateral order rule is called for.

Here, the order partially unsealing the record is clearly separable from the underlying action, the criminal trial of Sartin. Apparently, the information under seal deals with the identity of individuals involved in a grand jury investigation of the Lackawanna County Orphan's Court and also in a matter before the Disciplinary Board of the Supreme Court of Pennsylvania. The Newspapers' claim has little to do with the underlying trial, and the first prong of the collateral order rule is satisfied.

However, the two remaining prongs are not met. In their petition to remove the seal, the Newspapers set forth, as the right involved, their right to inspect the transcript in question under Pennsylvania's Right to Know Act, 65 P.S. § 66.1. Petition, filed November 26, 1996, at 1. Perhaps realizing that the Right to Know Act pertains only to public agencies and has no application to judicial proceedings, the Newspapers later changed their approach. *See Commonwealth*

*v. Fenstermaker,* 515 Pa. 501, 512, 530 A.2d 414, 420 (1987) (noting that the Right to Know Act applies to the records of public agencies rather than to the judiciary). In their Brief to this Court, the Newspapers then identified only the public's right of access to judicial proceedings as the right too important to be denied review and in danger of being irrevocably lost. Brief for Appellant, at 2. Assuming for purposes of argument that the right of access is implicated here, and that the issue has not been waived due to the Newspapers' failure to assert this right in their petition, we fail to see how postponing the instant appeal until final judgment has been entered in the underlying case places the right of access in jeopardy.

Admittedly, Pennsylvania courts have recognized the existence of the right of the public to observe the functioning of the criminal justice system. *PG Publishing Co. v. Commonwealth,* 532 Pa. 1, 5, 614 A.2d 1106, 1108 (1992); *Commonwealth v. Fenstermaker, supra,* at 508, 530 A.2d at 417 (1987). This right is not absolute, however, and it may be weighed against circumstances warranting closure of the record to public inspection. *PG Publishing Co., supra; Fenstermaker, supra,* at 513, 530 A.2d at 420. At the discretion of the trial judge and in the interest of protecting public as well as private interests, the public may be excluded, temporarily or permanently, from being present at certain judicial proceedings or examining the records of such proceedings. *PG Publishing Co., supra; Hutchison v. Luddy,* 417 Pa.Super. 93, 611 A.2d 1280, 1290 (1992); *Katz v. Katz,* 356 Pa.Super. 461, 514 A.2d 1374, 1377 (1986). Thus, although we concede that the right of access is an important right, in light of the fact that it can be delayed or denied under certain circumstances, we cannot conclude that the Newspapers' appeal is too important to be denied immediate review.

Moreover, in considering the right of access within the context of the collateral order rule, we fail to recognize how this right will be irreparably lost if review is postponed until final disposition of the underlying case. The trial court's order prevents the Newspapers, at least temporarily, from identifying

those involved in matters before the grand jury and the Disciplinary Board. This does not mean that the Newspapers and the public are forever barred from gaining access to the redacted information. *Cf. Hutchison, supra*, 611 A.2d at 1288 (permitting an appeal under the collateral order doctrine from an order that unsealed the record, in part, because once the information became public, appellant could not remedy the disclosure). Nothing precludes the Newspapers from seeking the redacted information and their right of access after the conclusion of the underlying trial. The redacted material is unlikely to disappear, and this information should be procurable in its original form after trial through proper legal procedures. Construing the requirements of the collateral order rule narrowly, we conclude that the matter at issue is effectively reviewable on appeal from final judgment. *See Johnson, supra* (noting that piecemeal appeals should be avoided); *Watson, supra* (explaining that the collateral order rule should be construed narrowly to preserve the integrity of the final judgment rule). Accordingly, because the requirements of the collateral rule are not satisfied, the Newspapers' appeal must be quashed.

Appeal **QUASHED.**

FORD ELLIOTT, J., files a dissenting statement.

FORD ELLIOTT, Judge, dissenting:

Because I would find that the order appealed from is a collateral order, I would reach the merits of this appeal. *See R.W. v. Hampe*, 426 Pa.Super. 305, 626 A.2d 1218, 1219 (1993) (holding that an order partially sealing the record to preclude plaintiff's name from being used in the caption was appealable as a collateral order). It is hard to imagine an order more separable from and collateral to the main cause of action than the one before us, which has so little relationship to the underlying criminal trial that Sartin's counsel did not address it. Likewise, the claimed right of public access is too important to be denied review. Finally, the press, which seeks to publish *news*, will be irreparably harmed if review of this order awaits disposition of the unrelated underlying crimi-

nal trial. Additionally, it is inconceivable that if Sartin is convicted, the press will have standing to appeal from his judgment of sentence and request a new trial based on this order. Furthermore, if Sartin is not convicted, there can be no appeal at all. As a result, I would find that the order at issue in this case is "effectively unreviewable on appeal from final judgment." *Commonwealth v. Johnson*, 705 A.2d at 832 n. 2. *See also In Re Estate of Petro*, 694 A.2d 627, 636 (Pa.Super.1997) (Ford Elliott, J. dissenting) (two necessary corollaries to the collateral order doctrine are that " '(1) the lower court's determination on the collateral matter must be final and (2) deferred appellate review of the lower court's determination would be either ineffective or impossible.' "), quoting Zigmont Pines, *Pennsylvania Appellate Practice: Procedural Requirements and the Vagaries of Jurisdiction (Part 1)*, 91 Dick.L.Rev. 55, 109–110 (1986).

As a result, I respectfully dissent.