**In re ESTATE of John E. duPONT, an Alleged Incapacitated Person.**

**Appeal of: Mark Anthony DeHaven.**

Superior Court of Pennsylvania.

Argued Nov. 18, 2008.

Filed Feb. 12, 2009.

Otis W. Erisman, Philadelphia, for appellant.

Taras M. Wochok, Paoli, for appellee.

BEFORE: STEVENS, KLEIN and CLELAND, JJ.

OPINION BY KLEIN, J.:

¶ 1 Mark Anthony DeHaven appeals from a trial court order denying his petition to open sealed incapacitation proceedings from 1996 involving John E. duPont. We affirm.

¶ 2 DeHaven claims he should be allowed to open sealed records of duPont's incapacitation proceedings, to prove his interest in a trust in the estate, because those seeking to seal the records must again meet the burden of proof of showing the necessity of sealing the records. The respondents claim that once the records are properly sealed, it becomes the obligation of the person seeking to unseal them to show good cause to open them.

The trial judge found that it was DeHaven's burden to show good cause to open the properly sealed records, and he did not meet that burden. We agree.

**FACTS AND PROCEDURE**

¶ 3 John E. duPont, one of the heirs of the duPont fortune, was involved in highly publicized proceedings after he was charged with the murder of David Schultz. DuPont was the sponsor of a wrestling program called Team Foxcatcher in which Schultz participated. The incapacitation proceedings were brought on September 11, 1996 by the duPont family to preserve duPont's significant assets. The basis for sealing the records was a need for privacy regarding the extensive detail of duPont's physical and mental health as well as financial affairs. The court entered an order sealing the record.

¶ 4 DeHaven had been a member of Team Foxcatcher and also claims to have carried out some other duties for the team. DeHaven alleges that duPont told him that he would never have to worry about health care or retirement, as duPont had set up a trust for him.

¶ 5 At this point, DeHaven has not filed any action against duPont or the trust. His claim is that if he and his counsel had access to all the trust documents, they might be able to establish a claim based on the fact that there should be a trust carved out for him. The trial court held that even assuming there is a valid claim, the prior order sealing the records should not be upset. Alternatively, the trial court proposed viewing all the records *in camera,* and if there was any mention of DeHaven and a trust for him in the records, this then could be turned over to DeHaven or his counsel. This solution was rejected by DeHaven.

## DISCUSSION

¶ 6 DeHaven claims that there is a public right of access to judicial proceedings and records, and the burden is on the party seeking closure to overcome the presumption of access. DeHaven claims there was no evidence presented at *this* hearing that would justify closure.

¶ 7 In general, "[i]n order to justify closure or sealing the record a party must overcome the common law presumption of openness. The existence of a common law right of access to judicial proceedings and inspection of judicial records is beyond dispute." *R.W. v. Hampe,* 426 Pa.Super. 305, 626 A.2d 1218, 1220 (1993), *citing Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059 (3d Cir.1984). However, this rule has its limitations, as this Court has also stated:

> [T]he public may be excluded, temporarily or permanently, from court proceedings or the records of court proceedings to protect private as well as public interests: to protect trade secrets, or the privacy and reputations of innocent parties, as well as to guard against risks to national security interests and to minimize the danger of an unfair trial by adverse publicity. These are not necessarily the only situations where public access can properly be denied. A bright line test has yet to be formulated. Meanwhile, the decision as to public access must rest in the sound discretion of the trial court.

*Zdrok v. Zdrok,* 829 A.2d 697, 700 (Pa.Super.2003), *citing Katz v. Katz,* 356 Pa.Super. 461, 514 A.2d 1374 (1986) (citations omitted).

¶ 8 Notwithstanding the above standard, the instant request by DeHaven is different from a typical petition to seal records for several reasons. First, the September 1996 proceeding as not attendant to a traditional trial, but rather a proceeding to declare duPont an incapacitated person. Section 5511 of Title 20 of the Pennsylvania Consolidated Statutes (Incapacitated Persons: Petition and hearing; independent evaluation) provides that "[t]he hearing may be closed to the public and without a jury unless the alleged incapacitated person or his counsel objects. The hearing shall be closed and with or without a jury if the person alleged to be incapacitated or his counsel so requests." 20 Pa.C.S. § 5511(a). As noted by the distinguished senior trial judge, the Honorable Edward J. Zetusky, Jr.,

> the sensitivity and personal nature of such proceedings has been recognized by the Pennsylvania Legislature itself, which incorporated ... an authorization for the Court to close such proceedings. Thus, the good cause for sealing the record in this matter is inherent in the nature of the proceeding and is of no less weight today than it was at the time the [c]ourt originally ordered the record to be sealed.

Trial Court Opinion, 2/29/08, at 2.

¶ 9 Second, DeHaven is asking the court to *unseal* the records where there has previously been a judicial determination to seal. Pennsylvania case law has only broached the issue of whether the courts have properly sealed a record, not whether one can unseal records that had been properly sealed. However, in making our decision we are guided by legal treatises and federal cases, as well as common sense. "Where court records have been properly sealed, they are subject to being reopened upon a showing of good cause." 20 AM-JUR 2d COURTS § 31. The United States District Court for the Eastern District of Pennsylvania held that:

> whether a record remains sealed is within the discretion of the district court, and the court must: (1) recognize the

common law presumption of public access; (2) apply a balancing test to determine prospectively whether the material to be sealed was the type of information normally protected or whether there is a clearly defined injury to be prevented and (3) provide and explain its clear reasoning for sealing the record.

*Zurich American Ins. Co. v. Rite Aid Corp.,* 345 F.Supp.2d 497, 504 (E.D.Pa. 2004). Additionally, the Second Circuit held that once a confidentiality order was entered, relied upon, and an order entered to seal the terms of the prior settlement agreement, that the sealing order can be modified only if extraordinary circumstances or compelling need warrants the requested modification. *See F.D.I.C. v. Ernst & Ernst,* 677 F.2d 230 (2d Cir.1982). The Third Circuit held that a party seeking to modify an order of confidentiality or sealed settlement agreement must come forward with a reason to modify the order, and once this is done, the court should balance the interests, including reliance by the original parties to the order, to determine whether good cause still exists for the order. *See Pansy v. Borough of Stroudsburg,* 23 F.3d 772 (3d Cir.1994).

¶ 10 We recognize that confidentiality orders are not the same as an order to seal the records in an incapacitation hearing. However, the standard to acquire a confidentiality order is primarily the same as that to seal a record;[1] therefore, the standard to unseal should also be primarily the same. As a result, we conclude that there is no provision for any "automatic" opening of the records and if there is some reason to open the records, the person seeking the record must demonstrate good cause and those seeking to maintain the situation of closure do not have to prove the need over again.

¶ 11 Instantly, DeHaven has presented no evidence whatsoever that there would be anything in those proceedings that would help him establish his claim to a multi-million-dollar trust. Not coincidentally, he claims that he was promised this trust, over seven years after the records were originally sealed, only after his $600.00 monthly stipend from John duPont was terminated.

¶ 12 Finally, Judge Zetusky offered a less obtrusive way to determine if duPont had carved out a special trust for DeHaven. Judge Zetusky was not only well within his discretion but crafted a common sense approach to both protect any claim of DeHaven and to protect the privacy rights of duPont and his family. An *in camera* review would solve both problems, allowing DeHaven to view anything that could involve him, but protecting duPont's privacy rights. However, this offer was refused by DeHaven.

¶ 13 We affirm Judge Zetusky's decision to refuse to open the sealed records to DeHaven and his counsel.

¶ 14 Order affirmed.

¶ 15 CLELAND, J., concurs in the result.

---

1. "Access to civil proceedings and records promotes public respect for the judicial process and helps to assure that judges perform their duties in an honest and informed manner. Accordingly, we have applied the presumption of public access to a variety of civil hearings and records, including the transcript of a civil trial and exhibits admitted at trial, settlement documents filed with the district court as well as post-settlement motions and a civil hearing for a preliminary injunction and transcripts of that hearing." *Republic of Philippines v. Westinghouse Elec. Corp.,* 949 F.2d 653, 660 (3d Cir.1991) (citations omitted), *citing Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059 (3d Cir.1983).