2 A.3d 516

**In re ESTATE OF John E. DU PONT,
an alleged incapacitated person.**

**Appeal of Mark Anthony DeHaven.**

Supreme Court of Pennsylvania.

Argued March 10, 2010.

Decided Aug. 17, 2010.

568

Geoffrey Paul Huling, Otis W. Erisman, Mary Elizabeth Dixon, White and Williams, L.L.P., Philadelphia, for Mark Anthony DeHaven.

Taras M. Wochok, Michael J. Hawley, Taras M. Wochok & Associates, Ltd., Paoli, for Estate of John E. Du Pont.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice SAYLOR.

In this appeal, we consider whether the public has a right of access to the record of proceedings held to declare a person incapacitated, where the record was previously sealed by order of the orphans' court.

In the 1990s, John E. duPont, one of the heirs of the DuPont fortune, resided at his 800–acre Delaware County estate, known as Foxcatcher Farm. Being a wrestling enthusiast, he founded a wrestling team called Team Foxcatcher, which maintained training and residence facilities at the farm. Following the death of his mother, duPont began acting erratically, culminating in his January 1996 killing of David Schultz, a member of Team Foxcatcher. *See generally Commonwealth v. duPont*, 730 A.2d 970, 973–74 (Pa.Super.1999) (providing additional background to the killing).

Several months after the incident, duPont's relatives sought to protect his significant assets. To that end, they applied for relief in the orphans' court, claiming that duPont was an incapacitated person and requesting the appointment of a

guardian.[1] The orphans' court granted the relief sought and, upon request, ordered that the record of the proceedings be sealed to protect the family's privacy regarding matters of duPont's physical and mental health, as well as his financial assets.[2]

In 2007, Appellant Mark DeHaven filed a petition in the orphans' court, seeking access to the sealed record of the incapacitation proceedings to determine whether he was the beneficiary of a trust carved out from duPont's estate.[3] According to the allegations in the petition, Appellant: was a member of Team Foxcatcher from 1993 to 1996; performed various duties at duPont's behest from 1997 through 2004 relating to wrestling instruction and farm supervision at Foxcatcher Farm; received a monthly stipend from duPont that was eventually terminated in December 2006; and was assured by duPont that he (Appellant) would not have to worry about health insurance or retirement income, as a trust had been established to handle these items. The estate responded, denying the material allegations in the petition and asserting that neither Appellant nor his attorneys have any legitimate basis to inspect the sealed record.

The orphans' court held a hearing on the matter at which the parties presented oral argument. During argument, Appellant conceded that he had no documentary or testimonial

1. An incapacitated person is defined as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S. § 5501.

2. These civil proceedings were separate from the criminal prosecution stemming from the Schultz homicide. In that matter, duPont raised an insanity defense, but the jury convicted him of third-degree murder, returning a verdict of guilty but mentally ill. The record of duPont's criminal prosecution is of no present relevance.

3. The petition was filed at the same docket number as the original incapacitation proceedings from 1996. The record before us does not contain any materials relating to those earlier proceedings. We do not view this as an impediment to our review, however, as we are not presently evaluating whether the orphans' court acted properly in 1996. Rather, as discussed below, the question for resolution pertains to whether the record of duPont's incapacitation proceedings should now be opened to the public.

evidence that the record contains information supporting his claim to a trust, although he offered to testify in support of the petition's allegations.[4] The court declined the offer, as it viewed such testimony to be irrelevant inasmuch as the court was prepared to assume, *arguendo,* that Appellant could articulate why he believed a trust might have been created for him. In this latter regard, the court clarified, first, that no specific challenge to the propriety of the original sealing order was being lodged, and second, that the salient legal question was whether the sealed record was now a "true public record"—i.e., presumptively available for public inspection unless the respondent could demonstrate a continuing need for confidentiality—or whether Appellant instead bore the burden of showing that circumstances had so changed since the sealing that there was no longer a need to protect the family's privacy. The court also observed that Appellant had not filed a complaint or a praecipe for a writ of summons, and hence, he was apparently attempting to engage in pre-litigation discovery. In an effort at accommodation, the court proposed to inspect the sealed record *in camera* to see if it could find anything supporting Appellant's allegations. Appellant refused the offer, suggesting that the court was less familiar with the case than he was, and thus, the court might overlook relevant documents.

The orphans' court eventually entered an order denying relief. In a supporting opinion, the court developed that, although the law gives the public a general right of access to judicial proceedings and court records, in many contexts courts have an inherent power to limit the exercise of that right, and may deny access where appropriate. Thus, the orphans' court explained that the public may be temporarily or permanently excluded from court proceedings and records if public or private interests require such exclusion. As applied

---

4. Appellant sought to introduce his own testimony on the grounds that it might aid his case to show that he had a colorable claim. Nevertheless, he agreed with the orphans' court's assessment that the gist of his contention was that the records should be open to the public, *see* N.T., Oct. 31, 2007, at 8, as he was not a party to the original proceedings, and had not yet commenced a civil action to enforce his rights as an alleged trust beneficiary.

presently, the court held that proceedings may be closed to the public if the party seeking closure demonstrates that its privacy interest "outweighs the presumption of openness." *In re Estate of duPont*, No. 563–1996, *slip op.* at 2 (C.P. Delaware, Orphans' Ct. Div., Feb. 26, 2008) (citing *In re M.B.*, 819 A.2d 59, 62 n. 2 (Pa.Super.2003)). The court concluded by noting that

> the underlying matter involved a proceeding to declare [duPont] an incapacitated person. The sensitivity and personal nature of such proceedings has been recognized by the Pennsylvania Legislature itself, which incorporated in the statute at 20 Pa.C.S. § 5511(a), an authorization for the [c]ourt to close such proceedings if requested by the alleged incapacitated person. Thus, the good cause for sealing the record in this matter is inherent in the nature of the proceeding and is of no less weight today than it was at the time the [c]ourt originally ordered the record to be sealed. Additionally, the [c]ourt has suggested a less intrusive alternative to unsealing the record, namely, to have an in camera review of the entire file by the [c]ourt to determine whether any trust document or evidence of such document existed in the record. Petitioner refused such a request insisting that nothing less than personal inspection of the [c]ourt file by his attorneys would be acceptable. In balancing the competing interests involved, and keeping in mind that Petitioner has yet to even institute any court proceedings to enforce his alleged right as a trust beneficiary, we conclude that the present interests continue to weight [sic] in favor of keeping the record in this matter sealed.

*Id.* at 2–3.[5]

A panel of the Superior Court unanimously affirmed. *See*

---

5. Section 5511(a), to which the orphans' court alluded, is part of the Probate, Estates and Fiduciaries Code (the "Code"). *See* Act of June 30, 1972, P.L. 508, No. 164, § 2 (as amended 20 Pa.C.S. §§ 101–8815). It provides, in relevant part:

> The court, upon petition and hearing and upon the presentation of clear and convincing evidence, may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian or guardians of his person or estate.... The hearing may be closed to the

*In re Estate of duPont,* 966 A.2d 636 (Pa.Super.2009).[6] The court acknowledged that there exists a common-law right of access to judicial proceedings and inspection of judicial records, but noted that the right is not absolute, as the public may, in the trial court's discretion, be excluded from such proceedings or records to protect public or private interests. *See id.* at 638 (citing *R.W. v. Hampe,* 426 Pa.Super. 305, 310, 626 A.2d 1218, 1220 (1993), *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059 (3d Cir.1984), and *Zdrok v. Zdrok,* 829 A.2d 697, 700 (Pa.Super.2003)). Observing that Appellant's present request did not pertain to a trial, but to a proceeding to declare duPont an incapacitated person, the court found Section 5511(a) of the Code relevant in that it allows for more liberal closure of proceedings in such cases. It also found persuasive the trial court's explanation that the "good cause" for sealing the record in the present matter is inherent in the nature of the case and supported by the legislative policy evidenced by the terms of Section 5511(a). *See Estate of duPont,* 966 A.2d at 638.

Additionally, and of particular relevance, the Superior Court recognized that a request to open records previously sealed by court order presents a distinct issue from whether records of proceedings should be sealed in the first instance. Noting that this constitutes an issue of first impression in Pennsylvania, the court referenced federal cases and a legal encyclopedia for guidance, ultimately concluding that there are no grounds for an automatic reopening of a previously-sealed record. Hence, the court found the burden to rest upon the party seeking access to demonstrate good cause, explaining that "those seeking to maintain the situation of closure do not have to prove the need over again." *Id.* at 639 (citing, *inter alia, F.D.I.C. v. Ernst & Ernst,* 677 F.2d 230, 232 (2d Cir. 1982) ("Once a confidentiality order has been entered and

---

public and without a jury unless the alleged incapacitated person or his counsel objects. The hearing shall be closed and with or without a jury if the person alleged to be incapacitated or his counsel so requests.
20 Pa.C.S. § 5511(a).

**6.** Judge Cleland concurred in the result without filing an opinion.

relied upon, it can only be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification."), *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir.1994) (deeming the *Ernst & Ernst* standard too stringent, but holding nonetheless that the party seeking to modify an order of confidentiality must first come forward with a reason to support modification, and, "[o]nce that is done, the court should then balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order"), and 20 AM. JUR.2D *Courts* § 31 (2009) ("Where court records have been properly sealed, they are subject to being reopened upon a showing of good cause.")). Because Appellant did not adduce any proof that the record contains documents supporting his claim to be a trust beneficiary, the Superior Court concluded that Appellant failed to carry his burden. *See id.*[7]

We allowed appeal primarily to determine whether the burden of persuasion rests upon the party offering, or the party opposing, a motion to modify a previously-entered order placing court records under seal. *See In re Estate of Dupont*, 603 Pa. 149, 150, 982 A.2d 1225, 1226 (2009) (per curiam).

Appellant contends that there is a general presumption that judicial records are open to the public, and proffers that this openness enhances public confidence in, and understanding of, the judicial system. He argues that the Superior Court failed to give sufficient weight to the public's right of access to such records, which he states derives from common law principles that pre-date the Constitution, and is enshrined in both the state and federal charters. *See* U.S. CONST. amend. I; PA. CONST. art. I, § 11. Under the proper approach, according to Appellant, the trial court should require the party seeking closure (in this case, duPont's estate) to rebut the general presumption of openness by showing that closure serves an

7. The Superior Court also suggested that the orphans' court had offered Appellant the opportunity to inspect the record *in camera,* and stated that such review would have allowed Appellant to view anything that could assist him, while protecting the estate's privacy. *See id.* As noted, however, the orphans' court only offered to inspect the record itself, and did not propose having Appellant inspect it.

important governmental interest and there is no less restrictive way to advance that interest. Appellant thus takes issue with the orphans' court's determination that the continuing need for privacy is inherent in the nature of the case, and with its consequent decision to relieve duPont's estate of the obligation to come forward with proof that the sensitive and personal nature of the records involved requires their continuing impoundment. He posits that the court's actions in this regard placed him in an impossible situation, namely, that he can only hope to establish the "good cause" needed to unseal the record if he is able to inspect that record.

As for the Superior Court's observation that Appellant's position is unusual in that he is asking the court to unseal a previously-sealed record, Appellant maintains that, in light of the overriding presumption of openness, the same standard should apply as if he were opposing the initial closure of the record. He also advocates that this Court adopt the reasoning of the Third Circuit in *In re Cendant Corporation*, 260 F.3d 183 (3d Cir.2001). In that matter, the court suggested that, even where an order requiring confidentiality had properly issued in the first instance, the order should be lifted at the earliest possible moment when the reasons supporting it no longer exist, and that any continued closure should be predicated on "current evidence" showing how public dissemination of the materials would cause harm in the present timeframe. *Id.* at 196.

Finally, Appellant stresses that the orphans' court was prepared to accept that he might have a valid claim—and hence that he is not a mere curiosity seeker—and that he would be satisfied if the court granted him access to the record subject to a proviso that he may not divulge its contents to the wider public.

DuPont's estate responds that the presumption of public access is not absolute, and notes that there are several discrete areas in which the Legislature and the courts have recognized a special need to maintain confidentiality. In particular, the estate indicates that incompetency proceedings are unique legal matters because they necessitate the expo-

sure of inherently private, personal information—such as detailed financial, medical, and psychiatric records—and that the General Assembly has recognized this uniqueness by requiring hearings on such issues to be closed to the public upon request. In this regard, the estate suggests an analogy to adoption proceedings, the records of which must be "withheld from inspection except on an order of court granted upon cause shown," 23 Pa.C.S. § 2905(a), and divorce proceedings, which are also afforded significant privacy protections. *See generally Katz v. Katz*, 356 Pa.Super. 461, 472, 514 A.2d 1374, 1380 (1986). The estate contends that the need for privacy is just as great in incapacity and guardianship matters as it is in adoption and divorce cases, because the evidence, if made public, could result in embarrassment and harassment, not only to the incapacitated person, but to others involved in the management of his assets.

As applied presently, duPont's estate argues that the presumption of public access was overcome by countervailing interests at the time the record was sealed in 1996, and that this, in turn, shows that good cause existed at that juncture to maintain confidentiality. It avers, moreover, that the essential nature of the information contained in the sealed record has not lost its private character since the original proceedings and, hence, the Superior Court was correct not to disturb the orphans' court's decision to require Appellant to bear the burden to show cause for the record to be unsealed, particularly as the determination of whether a record should remain sealed is committed to the sound discretion of the orphans' court.

■ Initially, the estate is correct in highlighting that a request to seal or unseal judicial records is a matter committed to the discretion of the common pleas court. *See Commonwealth v. Upshur*, 592 Pa. 273, 288, 924 A.2d 642, 651 (2007). Here, moreover, it should be recalled that Appellant was not a party to the underlying proceedings to declare duPont an incapacitated person, he had not filed suit against the estate, *see supra* note 4, and he possessed no evidence that the record contains documentation relevant to the trust that

he alleges was created for him. *See* N.T., Oct. 31, 2007, at 22. Likewise, the principal interpretive issue involved as articulated in Appellant's petition for allowance of appeal, and as rephrased by this Court in our order granting review, concerns the requirements for modifying an order placing documents under seal. Any such modification would implicate the public's, and not merely Appellant's, right of access to those documents.[8] Thus, the present controversy involves the right of *public* access to the sealed record of duPont's incapacity hearings. Even if we assume that Appellant has no intention to disseminate the contents of the record to other persons, as he emphasizes in his brief, the salient point is that, for purposes of this appeal, he is a member of the public in relation to the record to which he seeks access.[9]

As discussed, Appellant grounds his argument concerning a presumption of openness—and the consequent need to show cause for closure—largely on principles obtaining at common law. Unfortunately, his presentation does not explore the relationship between the common law and the express terms of Section 5511(a), which permit the orphans' court to close the proceedings *sua sponte*, and affirmatively require closure upon request.[10] These statutory provisions reflect a legislative judgment that closure should be permitted even in the absence of any showing of cause in each particular case—or, as stated by the orphans' court, "the good cause for sealing the record . . . is inherent in the nature of the proceeding[.]" *Estate of duPont*, No. 563–1996, *slip op.* at 2; *cf.* 20

8. Although this Court rephrased the issue, we did not alter its scope as framed by Appellant. By its terms, that question pertained to whether the Superior Court had failed to recognize common-law and constitutional rights of public access to judicial proceedings and court records.

9. We emphasize this point to distinguish the present issue from any separate question concerning pre-complaint discovery that may arise should Appellant ultimately file a praecipe for a writ of summons against the estate. *See generally McNeil v. Jordan*, 586 Pa. 413, 894 A.2d 1260 (2006).

10. It is not clear whether the court acted *sua sponte* in 1996, or in response to a request for confidentiality. The orphans' court, in its opinion, only stated that the presiding judge at the time entered an order sealing the record, and that no objection to that order was raised by any party. *See Estate of duPont*, No. 563–1996, *slip op.* at 1.

Pa.C.S. § 5502 (reflecting that one of the purposes of Chapter 55 of the Code, dealing with incapacitated persons, is to protect those individuals' rights). Accordingly—and as Appellant fails to recognize—the common-law presumption of openness has been substantially curtailed through legislative enactment in the context of incapacity proceedings. *See Program Admin. Servs., Inc. v. Dauphin County Gen. Auth.*, 593 Pa. 184, 192, 928 A.2d 1013, 1017–18 (2007) (recognizing that the Legislature sets public policy to be enforced by the courts and, absent constitutional infirmity, may modify the common-law approach in particular sets of circumstances); [11] *accord Balt. Sun Co. v. Mayor & City Council of Balt.*, 359 Md. 653, 755 A.2d 1130, 1135 (2000) (observing that the "common law rule that court proceedings, records, and documents are open to the public is fully applicable in Maryland except to the extent that the principle has been modified by legislative enactments or decisions by this Court," and identifying guardianship proceedings as one arena in which the sealing of records has been legislatively authorized). *See generally United States v. Texas*, 507 U.S. 529, 534, 113 S.Ct. 1631, 1634, 123 L.Ed.2d 245 (1993) (expressing that the retention of common-law principles is presumed except where a statutory purpose to the contrary is evident).

Nevertheless, and as reflected in our order granting review, the question remains whether, and under what circumstances, closure of the record should be maintained after it is initially sealed. In this regard, Appellant relies heavily upon the Third Circuit's decision in *Cendant*, which in turn was guided by *Leucadia, Incorporated v. Applied Extrusion Technologies*, 998 F.2d 157 (3d Cir.1993). *Cendant* and *Leucadia*, however, are materially distinguishable from the present case in that neither pertained to guardianship of incapacitated

11. Appellant does not allege that Section 5511(a) is constitutionally infirm. He does, however, state in passing that, even if the trial court properly ruled that the transcripts of the incapacitation hearings must remain sealed, Section 5511(a) should not be construed to require the sealing of other judicial records related to those hearings. *See* Brief for Appellant at 21. This interpretation would thwart the provision's objective to protect the privacy of individuals involved in an incapacitation proceeding.

persons or any other topic about which the legislative body has enacted special rules designed to protect personal privacy. The controversy in *Cendant,* for example, centered on the sealing of bids by various plaintiffs' lawyers to act as lead counsel in a class action against a securities firm. The bid sealing was undertaken to enhance the competitiveness of the auction, and the district court did not provide any substantive basis to maintain confidentiality after the auction was concluded, beyond generalized references to "adversarial integrity" and "strategy and tactics." *See Cendant,* 260 F.3d at 188–89. *Leucadia,* likewise, concerned a request by the lead plaintiff in a securities class action for access to discovery materials previously filed with the court under seal in a separate, trade-secret lawsuit between two corporations. In that context, although the court placed the burden on the corporations to show good cause for continued confidentiality, it did so in conformance with both the common-law presumption of openness and its interpretation of the applicable federal rule of civil procedure. *See Leucadia,* 998 F.2d at 166 (analyzing Fed. R.Civ.P. 26(c)).[12]

Here, by contrast, and as discussed, the common law presumption of public access has been modified by the General Assembly in the context of incapacitation proceedings in an effort to protect the rights of individuals with regard to personal information that could be damaging if exposed publicly. Moreover, Appellant has not articulated any basis to believe that private financial, medical, and psychiatric records—items that would ordinarily become part of the record of the proceedings on a Section 5511(a) petition—become less private or sensitive over time, or otherwise lose their potential to subject the incapacitated person or his family to embarrassment or possible harassment, especially where significant financial assets are being managed. *Compare In re Widener's Estate,* 437 Pa. 294, 296, 263 A.2d 334, 335 (1970) (approving

12. The Federal Rules of Civil Procedure were promulgated by the Supreme Court pursuant to enabling legislation enacted by Congress. *See Yousuf v. Samantar,* 451·F.3d 248, 253 (D.C.Cir.2006) (citing 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1004 (3d ed.2002)).

an orphans' court rule permanently impounding the testamentary writings of an individual adjudged incompetent as protective of his privacy rights), *with PA ChildCare LLC v. Flood,* 887 A.2d 309, 312 (Pa.Super.2005) (recognizing that the need for openness in judicial proceedings is especially pronounced in actions pertaining to the use of public funds and contracts with public entities).

Further, under Appellant's reasoning, the proponent of confidentiality would always bear the burden of demonstrating a need for continued privacy after the initial order sealing the record was entered. Thus, the burden would forever remain on the party requesting closure to come forward with evidence "show[ing] how public dissemination of the pertinent materials now would cause the [harm claimed]," Brief for Appellant at 25 (quoting *Cendant,* 260 F.3d at 196), no matter how little time had elapsed since entry of the original order or how many petitions for access had been interposed and rejected in the interim. Such a result would be in tension with the Legislature's judgment that a participant in a Section 5511(a) proceeding need not prove any particularized reasons relative to his individual case to justify closure in the first instance. Thus, we conclude that requiring the burden automatically to shift to the proponent of confidentiality in the post-sealing timeframe, as Appellant advocates, would be inconsistent with legislative intent.

Although Appellant does not challenge the constitutionality of Section 5511(a) (*see supra* note 11), he does assert that the right of public access to judicial proceedings is based, not only on common law, but on Article I, Section 11 of the Pennsylvania Constitution and the First Amendment, which has been interpreted to embody a general presumption of courtroom openness. *See Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 575–78, 100 S.Ct. 2814, 2826–28, 65 L.Ed.2d 973 (1980) (plurality). His argument seems to be that, even if he could not prevail under the common law, the Constitution independently requires that the estate presently demonstrate why the record should remain sealed in view of the general right of public access to judicial proceedings reflected, *inter*

*alia,* in the directive that "[a]ll courts shall be open[.]" PA. CONST. art. I, § 11. In this regard, Appellant notes that the Superior Court has utilized what it terms a "constitutional approach" to analyzing requests for closure of judicial proceedings, pursuant to which the proponent of closure is required to rebut the constitutional presumption of openness by showing that closure serves an important governmental interest using the least restrictive means available. *See* Brief for Appellant at 11–13 (citing *M.B.,* 819 A.2d at 62 n. 2).

■ While this Court is not bound by the Superior Court's holdings, we may find it useful to address its reasoning, particularly on questions of first impression. *See Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien,* 589 Pa. 296, 306, 908 A.2d 875, 881 (2006). Here, however, the Superior Court decisions on which Appellant relies are of limited value, as they all pertain to the question of whether the proceedings at issue should be open or closed in the first instance. *See PA ChildCare LLC v. Flood,* 887 A.2d 309 (Pa.Super.2005); *Zdrok v. Zdrok,* 829 A.2d 697 (Pa.Super.2003); *M.B.,* 819 A.2d at 61; *R.W. v. Hampe,* 426 Pa.Super. 305, 626 A.2d 1218 (1993); *Commonwealth v. Milice,* 401 Pa.Super. 96, 584 A.2d 997 (1991); *Hutchison v. Luddy,* 398 Pa.Super. 505, 581 A.2d 578 (1990), *rev'd on other grounds,* 527 Pa. 525, 594 A.2d 307 (1991) (per curiam); *cf. Commonwealth v. Hayes,* 489 Pa. 419, 426–28, 414 A.2d 318, 321–22 (1980) (plurality) (allowing for public exclusion from criminal proceedings "where the interests of justice require" it, but stating that any limitation on access should be "carefully drawn"). Where a judicial record has been impounded and there is no claim that such action was improper, a qualitatively different circumstance pertains. Appellant's argument fails to address this difference, but simply assumes that the state and federal charters require the same presumption of openness in this latter scenario as the Superior Court has found to exist in the former.

■ We are not persuaded that this assumption is correct. Such an interpretation would mean that, regardless of the

nature of the information sought to be kept confidential, the Constitution would require the proponent of closure to demonstrate the need for confidentiality even where, as here, an unchallenged order sealing the record had already issued. Such an approach would be, at best, somewhat inflexible, and therefore at odds with the concept that the constitutional mandate is not absolute, but admits of flexibility in view of the courts' supervisory powers over their records—as Appellant candidly recognizes. *See* Brief for Appellant at 19 (citing *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir.1986) ("Just as the right of access is firmly entrenched, so also is the correlative principle that the right of access, whether grounded on the common law or the First Amendment, is not absolute.")); *see also Upshur*, 592 Pa. at 287, 924 A.2d at 651 ("[T]he right to examine public judicial documents is not absolute, and courts retain supervisory power over their records and documents."); *accord In re Knoxville News–Sentinel Co.*, 723 F.2d 470, 474 (6th Cir.1983) ("[T]rial courts have always been afforded the power to seal their records when interests of privacy outweigh the public's right to know.").[13] Moreover, Appellant does not bring to our attention any authority tending to support the concept that a constitutional presumption of openness attaches to the record of proceedings in a case such as the present one—where a sealing order has been entered and remains unchallenged. Accordingly, as a matter of first impression, and in view of Pennsylvania courts' supervisory powers to control access to their own records, we conclude that neither Article I, Section 11's Open Courts Clause, nor the First Amendment, requires the orphans' court to place upon an incapacitated person's estate the burden of demonstrating the need for continuing confidentiality every time a non-litigant seeks access to the record of his guardianship proceedings.

13. Courts have identified several interests protected by closure, including trade secrets, national security, and privacy. *See generally Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–99, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978); Ronald D. May, *Public Access to Civil Court Records: A Common Law Approach*, 39 Vand. L. Rev. 1465, 1502–03 (1986) (citing cases).

■ Logically, then, the only remaining question is whether the passage of time alone has caused the burden to shift back to duPont's estate to establish why the record should remain sealed at this juncture. On this question, we agree with the estate's position, largely for the reasons it articulates and based on the well-reasoned opinion of the orphans' court. As already explained, the privacy interests involved are undisputed and there is no evident reason why they are any less deserving of judicial protection now than when the incompetency proceedings occurred in 1996. Unlike *Cendant*, for example, this is not a situation where external events have caused the original reasons supporting the sealing of the record to become outdated.

■ For the above reasons, we agree with the Superior Court that, under the present circumstances, Appellant bore the burden to "demonstrate good cause" to modify the 1996 order placing the estate's documents under seal. *Estate of duPont*, 966 A.2d at 639. We also conclude that the orphans' court acted within its discretion in denying the request for such modification.

The order of the Superior Court is affirmed.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD and McCAFFERY join the opinion.