J-A07029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| MARIA T. CASEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CATHERINE ERTEL, ET AL | : | No. 1171 MDA 2020 |

Appeal from the Order Entered August 6, 2020
In the Court of Common Pleas of Lycoming County Civil Division at
No(s):  CV-13-2315

BEFORE:   BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 09, 2021**

Appellant, Maria T. Casey, appeals from the August 6, 2020 Order denying her "Renewed Motion to Vacate the January 21, 2014 Order Placing Matter under Seal and to Require [Appellees] to Disclose the Status of the Commonwealth Court Action Against Them" entered in this action alleging Retaliatory Termination under the Pennsylvania Whistleblower Law and Wrongful Termination.   After careful review, we quash this appeal as interlocutory.

Appellees are the directors and officers of Firetree, Ltd. ("Firetree"), a 501(c)(3) nonprofit, and other related entities.  Firetree and its related entities receive taxpayer funds through local, state, and federal government contracts to provide, *inter alia*, drug and alcohol treatment and reentry services in the

_____

[*] Former Justice specially assigned to the Superior Court.

Commonwealth.  On April 19, 2010, Firetree hired Appellant as its general counsel.

In the summer of 2013, while working for Firetree, Appellant contacted the Pennsylvania Office of the Attorney General ("OAG") with information that Appellees were allegedly engaging in self-dealing by carrying out numerous transactions involving the disbursement of charitable assets for their personal benefit or for the benefit of affiliated for-profit companies.  The OAG initiated an investigation under the Solicitations of Funds for Charitable Purposes Act and served Appellees with subpoenas.  Appellant, still employed as Firetree's General Counsel, refused to file a motion to quash the subpoenas, and Appellees then learned that Appellant was the source of the OAG's information regarding Firetree's alleged misdeeds.  Appellees terminated Appellant's employment effective September 6, 2013.  Appellees thereafter filed a Motion in Commonwealth Court to quash the subpoenas and block the OAG investigation.[1]

On September 16, 2013, Appellant initiated the instant action by filing a Complaint in the Court of Common Pleas ("Whistleblower Action").  She asserted claims of wrongful termination and alleged that Appellees had violated the Pennsylvania Whistleblower Law, 42 Pa. Stat. §§ 1421-28.

---

[1] The OAG subsequently filed a Complaint in Commonwealth Court.  We refer to the Commonwealth Court activity collectively as the "AG Action."  *See New Foundations, Inc. et al. v. Commonwealth of Pa.*, No. 457 MD 2013 (Pa. Commw. 2013); *New Foundations. Inc., et al. v. Commonwealth of Pa.*, No. 36 MD 2014 (Pa. Commw. 2014).

Appellant attached as exhibits to the Complaint internal Firetree documents, which included financial information and other documents created or obtained by Appellant during the course of her employment as Firetree's General Counsel. Appellant did not file the Complaint under seal.

Soon thereafter, the OAG responded in Commonwealth Court to Appellees' Motion to Quash the Subpoenas by filing an Answer and "Counterclaim," and attached a copy of Appellant's whistleblower Complaint and its exhibits. Appellees responded that the Complaint and exhibits contained confidential and attorney-client privileged information in violation of Appellant's professional, fiduciary, and contractual duties, including unredacted emails and four quarterly reports written by Appellant in her capacity as in-house counsel. On October 31, 2012, the Commonwealth Court issued an Order sealing the OAG's response and its accompanying Exhibits ("Sealing Order").

Following issuance of the Sealing Order in the Commonwealth Court, Appellees filed a Motion in the Court of Common Pleas requesting an Order sealing the records in the instant Whistleblower Action. On January 21, 2014, the trial court granted Appellees' Motion. In its Order, the court indicated that it would "be vacated and the record unsealed in the event the Commonwealth Court unseals its own record."

On December 10, 2015, the Commonwealth Court partially unsealed the record in the AG Action. In particular, the Commonwealth Court unsealed documents filed on or after June 15, 2015, while leaving sealed the documents

filed before that date. Importantly, those documents, which continue to be under seal in the Commonwealth Court, include the privileged documents created or obtained by Appellant in the course of her employment with Firetree and disclosed by her when she filed them as exhibits to her Whistleblower Complaint.

Following the filing of the Commonwealth Court's Order partially unsealing the record, Appellant twice requested, at hearings on other issues, that the trial court unseal the record in the instant Whistleblower Action. In both instances, the trial court denied Appellant's requests.[2] In a third attempt to have the Whistleblower Action record unsealed, on November 9, 2016, Appellant filed a Motion requesting that the trial court vacate its January 21, 2014 sealing Order and unseal the record. On December 7, 2016, the trial court denied the Motion. Appellant did not appeal from any of these Orders.

Litigation in the Whistleblower Action stalled while the parties awaited resolution of the AG Action, where the Commonwealth and Firetree entered into settlement negotiations.

On November 1, 2019, Appellant filed another Motion to Vacate the Sealing Order and also filed a Motion to Compel the disclosure of confidential settlement negotiations in the AG Action. On August 6, 2019, the trial court denied Appellant's Motion, acknowledging that unsealing the record in the

_____

[2] **See** Orders dated 3/28/16 and 6/28/19.

- 4 -

Whistleblower Action would result in publicizing documents that remain under seal in the AG Action. This appeal followed.[3]

Appellant raises the following issues on appeal:

1. The trial court erred in applying the coordinate jurisdiction rule because that rule is poorly suited for review of a motion to unseal, as sealing of court proceedings is highly disfavored.

2. The [t]rial [c]ourt erred in declining to lift the blanket seal because the blanket seal was based entirely on the sealing of the record in the [AG Action]. This is error even if the [t]rial [c]ourt correctly applied the coordinate jurisdiction rule[] because the prior decision was clearly erroneous and would create manifest injustice.

3. The [t]rial [c]ourt erred in declining to lift the seal in [the Whistleblower Action] because the blanket seal clashes with the important government interest in transparency, particularly in judicial decisions. Further this seal serves no important government interest and there are less-restrictive

_____

[3] Appellant initially purported to appeal from the both the denial of her Motion to Vacate the Order sealing the record and the denial of her request to obtain information regarding the confidential settlement communications in the AG Action. On October 5, 2020, Appellees filed a Motion to Quash this appeal as interlocutory. The following day, this Court issued a Rule upon Appellant to show cause as to why we should not dismiss this appeal as interlocutory. On October 16, 2020, Appellant filed a consolidated Response to the Motion and the Rule in which she addressed only the collateral nature of the portion of the appealed Order denying her Renewed Motion to Vacate the Seal. She did not respond to this Court's inquiry as to why we should not dismiss her appeal from the portion of the Order denying her request for an Order that Appellees disclose the terms of the confidential settlement agreement with the Commonwealth in the AG Action, and, in fact, she stated that "[t]his appeal is taken from that portion of an Order of the trial court [] entered August 6, 2020[,] denying [Appellant's] request to vacate a blanket order sealing the entire record of this case." Response, 10/16/20, at 1. **See also** Appellant's Brief at 13. Accordingly, because Appellant did not set forth any argument from which we could conclude that we have jurisdiction over the portion of the trial court's Order pertaining to the confidential settlement agreement, we quash her appeal from that portion of the Order.

means available to protect attorney-client privilege. This is error even if the [t]rial [c]ourt correctly applied the coordinate jurisdiction rule[] because the prior decision was clearly erroneous and would create manifest injustice if enforced.

4. [ ] [T]he [t]rial [c]ourt erred in declining to find [Appellees'] diminished interest in secrecy does not outweigh the common law presumption of openness. This is error even if the [t]rial [c]ourt correctly applied the coordinate jurisdiction rule[] because the prior decision was clearly erroneous and would create manifest injustice if enforced.

5. [ ] [T]he [t]rial [c]ourt erred in declining to find that [Appellees] should be required to disclose the status of the settlement of [the AG Action]. This is error even if the [t]rial [c]ourt correctly applied the coordinate jurisdiction rule[] because the prior decision was clearly erroneous and would create manifest injustice if enforced.

Appellant's Brief at 4-5.

Before we address the merits of Appellant's claims, we must consider whether we have jurisdiction over them. *In re Miscin*, 885 A.2d 558, 560-61 (Pa. Super. 2005). "The question of the appealability of an order goes directly to the jurisdiction of the Court asked to review the order." *Moyer v. Gresh*, 904 A.2d 958, 963 (Pa. Super. 2006) (citation omitted). Appellant has asserted that the interlocutory Order denying her Renewed Motion to Vacate is appealable as collateral order pursuant to Pa.R.A.P. 313.

Pennsylvania Rule of Appellate Procedure 313 defines a collateral order as one that: "1) is separable from and collateral to the main cause of action; 2) involves a right too important to be denied review; **and** 3) presents a question that, if review is postponed until final judgment in the case, the claim will be irreparably lost." *In re Bridgeport Fire Litigation*, 51 A.3d 224, 230

n.8 (Pa. Super. 2012) (emphasis added); Pa.R.A.P. 313(b). Our Supreme Court has emphasized that:

> the collateral order doctrine is a specialized, practical application of the general rule that only final orders are appealable as of right. Thus, Rule 313 must be interpreted narrowly, and the requirements for an appealable collateral order remain stringent in order to prevent undue corrosion of the final order rule. To that end, each prong of the collateral order doctrine must be clearly present before an order may be considered collateral.

**Melvin v. Doe**, 836 A.2d 42, 46-47 (Pa. 2003) (internal citation omitted).

The parties here agree that the appealed order is separable from the underlying Whistleblower Action in that it is capable of review without considering the underlying merits of the case. We agree and we, thus, focus on the second and third elements—importance and irreparable loss.

To determine whether an issue is sufficiently important to allow review of an interlocutory order pursuant to the collateral order doctrine, a court should "weigh the interests implicated in the case against the costs of piecemeal litigation." **Ben v. Schwartz**, 729 A.2d 547, 552 (Pa. 1999). "[I]t is not sufficient that the issue be important to the particular parties. Rather it must involve rights deeply rooted in public policy going beyond the particular litigation at hand." **Id**. (quoting **Geniviva v. Frisk**, 725 A.2d 1209, 1213-14 (Pa. 1999). Finally, irreparable loss results from postponement if no effective means of review exist after the entry of final judgment. **See Schwartz**, 729 A.2d at 552.

With respect to the second element of the collateral order doctrine, Appellant asserts that this Order presents an issue too important to defer

review until after the ultimate resolution of this case because it denies her right to "fair proceedings" against "politically influential defendants." Response to RTSC, 10/16/20, at 2.  She further argues that the seal has frustrated the right of the press and the public to access judicial records, thereby depriving them of the opportunity to "know the facts that underlie this dispute" and "ensure that the judicial branch of the government is fairly adjudicating and adequately protecting" their interests.  *Id.* at 2-3, 12, 14. Appellant essentially argues that the denial of her request to unseal records raises an issue deeply rooted in public policy because her ability to have a fair trial hinges on the public knowing the substance of her allegations against Appellees and that interest outweighs Appellees' right to have its attorney-client privileged documents sealed from the public.[4]  *Id.* at 12.

While Appellant is correct that the public's right of access to judicial records deeply is rooted in public policy, the right of access can be delayed or denied in certain circumstances.  ***A.A. v. Glicken***, 237 A.3d 1165, 1170 (Pa. Super. 2020); ***In re Estate of Dupont***, 966 A.2d 636, 638 (Pa. Super. 2009), *aff'd*, 2 A.3d 561 (Pa. 2010); ***Commonwealth v. Sartin***, 708 A.2d 121, 123 (Pa. Super. 1998) ("At the discretion of the trial judge and in the interest of protecting public as well as private interests, the public may be excluded,

---

[4]In her Brief, Appellant characterizes the sealed documents as "embod[ying] her admonitions to [Appellees] to conform their conduct to the requirements of the law in dealing with the assets of Firetree."  Appellant's Brief at 6-7.  She does not assert therein that these documents were not protected by the attorney-client privilege.

temporarily or permanently, from . . . examining the records of such proceedings.").

Appellant argues that this Order implicates a right that goes beyond this particular litigation because Appellees' political influence in the community threatens her right to a fair proceeding. Response at 12. Although this is an interest of import to Appellant, it does not involve a right deeply rooted in public policy going beyond the particular litigation at hand. Instead, this argument demonstrates that Appellant seeks interlocutory review in an effort to somehow benefit personally from an order unsealing the record. It is not clear to this Court how unsealing attorney-client privileged communications in the instant case protects the general right of the public to have access to judicial records.

Appellant also argues that the trial court's Order has deprived the public and the press of the opportunity to "know the facts that underlie this dispute" and "ensure that the judicial branch of the government is fairly adjudicating and adequately protecting" their interests. *Id.* at 2, 14. Stated another way, Appellant asserts that, in the absence of **this** record being open, the trial court—and any other court addressing her claims—cannot be trusted to protect the public's interest. This argument amounts to nothing more than a bald, unsupported claim that the trial court cannot fairly adjudicate Appellant's claims if the record is not public. Thus, this argument likewise fails to

demonstrate that the trial court's Order denying Appellant's request to unseal the record implicates an interest that goes beyond this particular litigation.[5]

Because the Order denying Appellant's request to unseal the record does not meet all three prongs of the collateral order doctrine, this Court does not have jurisdiction to review this interlocutory Order.

Appeal quashed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/9/2021

---

[5] In light of our conclusion that the order on appeal does not satisfy the second element of the collateral order doctrine, we need not address whether it satisfies the third element.